[Criminal No. 608.   Filed February 17, 1926.]

[243 Pac. 601.]

## HARRY MIDKIFF, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—AFFIDAVIT FOR CONTINUANCE, BASED ON PROPOSED TESTIMONY OF ABSENT WITNESS, STATING ONLY CONCLUSIONS PROVABLE BY OTHERS, HELD INSUFFICIENT.—Affidavit for continuance on ground that certain person was present at time of alleged assault by defendant, and would testify that defendant was first assaulted, *held* insufficient, where it did not show that such other person had not in good faith withdrawn from affray, and it appeared that most things affidavit stated proposed witness would testify to were conclusions of affiant, and affidavit did not state that what was proposed to be proved could not have been proved by others present, and other witnesses were produced by whom defendant could have proved such facts.

2. ASSAULT AND BATTERY.—Assault with deadly weapon is not justifiable, where party assaulted, though first offender had in good faith withdrawn from affray.

3. CRIMINAL LAW—AFFIDAVIT FOR CONTINUANCE, NOT STATING THAT PROPOSED WITNESS WAS PRESENT AT TIME OF ALLEGED CRIME OR THAT SHE PERSONALLY SAW OR HEARD ANYTHING, HELD INSUFFICIENT.—Affidavit for continuance, though setting out that defendant's wife was ill and unable to appear in court, and that, if she were present, her testimony as to what took place at time defendant was charged with assaulting prosecuting witness would be corroborative of testimony of another, *held* insufficient; affidavit not stating that defendant's wife was present at time or that she personally saw or heard anything.

4. CRIMINAL LAW.—When evidence sought is cumulative, or for impeaching purposes, ordinarily continuance will not be granted.

5. CRIMINAL LAW—STATEMENT IN APPELLANT'S BRIEF THAT CERTIFICATE SUPPLIED IN BRIEF WAS ATTACHED TO ORIGINAL JURY LIST HELD NOT EVIDENCE.—Where appellant, in his brief, attempted to supply certificate of clerk of court of supervisors as to list of jurors, which did not appear of record, and stated that such was attached to original list, held that such statement in brief was not evidence, and could not be substituted for it.

---

1. Sufficiency of affidavit on motion for continuance, see note in 42 L. R. A. (N. S.) 668. See, also, 6 R. C. L. 562, 564.

2. See 2 R. C. L. 549.

6. JURY—CHALLENGE TO JURY ON GROUND THAT LIST WAS NOT MADE OUT IN COMPLIANCE WITH STATUTES HELD PROPERLY DENIED (CIV. CODE 1913, PARS. 3522, 3525; PEN. CODE 1913, § 1017 ET SEQ.).—Challenge to jury on ground that list was not made in compliance with Civil Code of 1913, paragraph 3522, and jurors had not been selected from list in compliance with paragraph 3525, *held* properly denied under Penal Code of 1913, section 1017 et seq., where there was no showing that there was material difference in number of persons qualified and liable to serve as jurors in county and list as made out by board of supervisors and certified by clerk.

7. JURY — STATUTE DIRECTING BOARD OF SUPERVISORS TO INCLUDE IN JURY LIST ALL PERSONS QUALIFIED AND LIABLE TO JURY SERVICE HELD DIRECTORY AND NOT MANDATORY (CIV. CODE 1913, PARS. 3515, 3516, 3522). — Civil Code of 1913, paragraph 3522, empowering board of supervisors to make jury list, and to place thereon all persons in county qualified and liable to jury service, *held* directory and not mandatory, in view of paragraphs 3515 and 3516.

8. JURY — JURY LIST REQUIRED TO INCLUDE ALL PERSONS QUALIFIED AND LIABLE TO JURY SERVICE, IN ORDER TO DISTRIBUTE BURDEN OF JURY DUTY (CIV. CODE 1913, PAR. 3522).—Provisions of Civil Code of 1913, paragraph 3522, directing board of supervisors to include in jury list all persons qualified and liable to jury service, are not for benefit of accused so much as for purpose of distributing burdens of jury duty.

9. JURY.—Failure to revise jury list will not vitiate venire, in absence of bad faith or corruption on part of board of supervisors.

10. JURY.—Names of policemen and firemen were properly omitted from jury list, since they are exempt from jury service.

11. REMOVAL OF CAUSES.—Removal of criminal prosecution to federal court, on ground that improper impaneling of jury deprived accused of rights of a United States citizen, was properly denied.

12. JUDGES.—Power and jurisdiction of any of three regular judges presiding over superior court of Maricopa county to hear and determine any controversy pending in such court is coequal with that of the other two members.

13. JUDGES.—One of three regular judges presiding over superior court of Maricopa county *held* to have jurisdiction of criminal prosecution, though case was originally assigned to another judge.

14. CRIMINAL LAW.—Party desiring to have testimony excluded should object thereto, and, failing in that, should move to have it stricken.

15. CRIMINAL LAW.—Question to defendant's witness, if he knew that T. had withdrawn from case, answered in the negative, *held* not prejudicial to defendant.

16. CRIMINAL LAW.—Assignment that "court erred in overruling defendant's motion for a new trial" *held* not to advise court what defendant desired to review, nor did it conform to court rule 12, section 2.

17. INDICTMENT AND INFORMATION.—Judge, after trial, on testimony showing that copy of information was true one, properly entered *nunc pro tunc* order that copy be filed as original information.

18. CRIMINAL LAW.—Improper question of county attorney concerning defendant's witness *held* not prejudicial, in view of court's prompt direction to jury to disregard question.

19. CRIMINAL LAW.—Instructions either containing incorrect statements of law or covered by those given were properly refused.

20. WITNESSES.—Witness' conviction of crime may generally be shown to affect his credibility.

21. WITNESSES.—Court-martial for desertion may not be shown for purpose of affecting credibility of witness; such offense not being crime under general law.

See (1, 2) 16 **C. J.,** p. 500, n. 77; p. 504, n. 17.　(2) 5 **C. J.,** p. 748, n. 38 New.　(3) 16 **C. J.,** p. 501, n. 88; p. 502, n. 93.　(4) 16 **C. J.,** p. 465, n. 73; p. 467, n. 92; 35 **C. J.,** p. 258, n. 45.　(5, 6) 17 **C. J.,** p. 179, n. 3; 35 **C. J.,** p. 268, n. 1, 3.　(7, 8) 35 **C. J.,** p. 257, n. 41, 43; p. 268, n. 2.　(9, 10) 35 **C. J.,** p. 255, n. 3; p. 263, n. 29; p. 267, n. 83, 85, 86.　(11) 34 **Cyc.,** p. 1223, n. 57.　(12, 13) 33 **C. J.,** p. 969, n. 29.　(14, 15) 16 **C. J.,** p. 879, n. 48, 56; p. 885, n. 63; 17 **C. J.,** p. 315, n. 77.　(16) 17 **C. J.,** p. 181, n. 38.　(17) 31 **C. J.,** p. 596, n. 84, 87; p. 597, n. 97.　(18) 16 **C. J.,** p. 917, n. 67.　(19) 16 **C. J.,** p. 1063, n. 85; p. 1066, n. 89.　(20, 21) 40 **Cyc.,** p. 2607, n. 61; p. 2609, n. 66.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Dudley W. Windes, Judge. Affirmed.

Mr. R. E. L. Shepherd, for Appellant.

20. Impeachment of witness by proof of conviction of crime, see notes in 73 Am. Dec. 775; 40 Am. St. Rep. 791; 82 Am. St. Rep. 34; 41 L. R. A. (N. S.) 877. See, also, 28 R. C. L. 624.

Mr. John W. Murphy, Attorney General, and Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

ROSS, J.—The defendant was convicted of an assault with a deadly weapon, charged in the information to have been committed on the person of one E. L. Guernsey with a knife, on January 31, 1924.

He appeals and asks that the judgment of conviction be reversed and he be granted a new trial for thirteen reasons, which he makes the basis of that many very informal and insufficient assignments of error. We will overlook the informality and the lack of compliance with our rules and take up these assignments and give to each of them such consideration as they seem to merit.

The first is that "the court erred in overruling defendant's motion for a continuance." The defendant's efforts to avoid a trial of his case were manifested in many devious ways. He was informed against March 17, 1924. He was arraigned before Honorable M. T. PHELPS, Judge of the superior court of Maricopa county, on March 27th, on which date the time for taking his plea was set for March 31st. On the last-mentioned date, on defendant's motion, the time for taking plea was reset for April 2d. On his motion, the time was again postponed to April 4th, when he was heard on a motion to set aside the information, also on his demurrer. The motion being denied and demurrer overruled, he then pleaded "not guilty," and the case was set down for trial May 15th. On May 5th he moved that the case be reset to a later date, which motion was considered on May 7th and 8th and defendant given time to file amended affidavits. On May 9th the setting for May 15th was vacated and the case reset for July 1st.

In the meantime, the defendant, instead of filing an affidavit of bias and prejudice, gently broke the news to Judge PHELPS that such an affidavit would be filed unless he voluntarily transferred the case to another judge. Thereupon, on June 3d, Judge PHELPS, moved no doubt by a desire to save defendant the trouble of making and filing such a paper and to assure defendant a trial before a judge free from bias and prejudice, assigned the case to the Honorable E. E. BOLLINGER, judge of the superior court of Mohave county. It appeared a little later that the good intentions of Judge PHELPS, in assigning the case to Judge BOLLINGER, were wasted, for on June 27th, the latter, happening to be presiding over one of the divisions of the superior court of Maricopa county, was made to know by defendant that he also was objectionable because of his bias and prejudice, whereupon Judge BOLLINGER, without exacting an affidavit and on his own motion, assigned the case to the Honorable RICHARD LAMSON, judge of the superior court of Yavapai county. On the call of the case for trial on July 1st, it developed that Judge LAMSON was too ill to preside, and in his absence the Honorable FRED C. STRUCKMEYER, one of the regular judges of the superior court of Maricopa county, took the case up and was proceeding to try it, when defendant, who had beforetime prepared an affidavit to disqualify Judge LAMSON, wrote in the blank space left for Judge LAMSON'S name the name of Judge STRUCKMEYER, and thus another judge was disposed of. The Honorable DUDLEY W. WINDES, one of the regular judges of the superior court of Maricopa county, was sent for and assumed the bench and presided during defendant's trial.

Here the extraordinary means theretofore adopted to avoid a trial were abandoned, but be it known that

Judge WINDES, in the course of the trial, had no path of roses to tread, but was confronted with motions, petitions, objections, etc., some of them being novel as well as unique. The first was the motion for a continuance. This motion was based upon the affidavit of defendant, in which he states that one Marion Maberry was present at the time he is charged with assaulting the prosecuting witness or witnesses, and that he would testify, if at the trial, that such witness or witnesses attacked and assaulted defendant with knives and a stove poker without any cause, and before defendant used any force to defend himself, and that defendant used only such reasonable force as a reasonable and prudent person would use in defense of his life or to keep from receiving great bodily harm. The affidavit shows diligence in causing a subpoena for such witness to be placed in the hands of the sheriff for service, and states that such officer neglected and failed to serve same and permitted Maberry to leave the jurisdiction. It is obvious that the contents of the affidavit are insufficient. Most of the things he states Maberry would testify to are his own conclusions and not evidence at all. Even if the prosecuting witnesses did first assault defendant, so far as the affidavit shows, they might have in good faith withdrawn from the affray, in which case the defendant's assault would not have been justifiable. However, it was not stated in the affidavit that what was proposed to be proved by Maberry could not be proved by others who were present. In the trial it developed that there were present a great number of eye-witnesses. Besides the prosecuting witness, the following named witnesses for the state testified to being present and seeing what took place: Oliver Gompert, Herbert Geare, C. L. Curry, Mrs. Edith Brown, Bob West and Dick Morris—and for the defendant: George Pray, Ben Blumm, James Baldwin,

Oscar Burnett and Richard Kilpatrick. It is very improbable that Maberry's testimony, if he had been present, would have been other than a repetition of what the witnesses present and testifying stated the facts to be. Even if the affidavit had stated that defendant had no other witness by whom he could prove what he had stated Maberry would testify to (which it did not) the after-developments at the trial completely refuted it.

The affidavit for continuance further set out that defendant's wife was ill and unable to appear in court and testify; that, if she were present, her testimony as to what took place at the time of the assault would be corroborative of that of Maberry. The affidavit does not state that defendant's wife was present at the time, or that she personally saw or heard anything. It was clearly insufficient.

It is also stated in such affidavit that one Charles Sorenson, for whom a subpoena had been issued but not served, if present, would be an important and material witness for defendant, but "that the nature of the evidence that the said Charles Sorenson will give . . . is such that this affiant cannot safely set it out, as his testimony would be such as will impeach certain witnesses subpoenaed by the state of Arizona, and it would be highly dangerous and inconsistent for this affiant at this time to disclose the testimony of said Charles Sorenson. . . . ''

It is apparent that no sufficient grounds for a postponement of trial were set out in the motion, and that it was properly denied. When the evidence sought is cumulative or for impeaching purposes, ordinarily a continuance will not be granted; and in this case, in view of the defendant's pernicious tactics beginning with his arraignment on, to have further delayed the trial, would have been a marked abuse of the court's discretion.

The next assignment is that "the court erred in overruling defendant's challenge to the entire trial jury." By looking to the entire record, we find this assignment is intended as an attack upon the jury list as made by the board of supervisors under paragraph 3522, Civil Code of 1913, for the year 1924, and upon the manner of selecting the regular trial jurors from said list for said year by the clerk of the superior court, county recorder and chairman of the board of supervisors, the officers upon whom the duty of selecting such trial jurors is conferred by paragraph 3525, Id. The grounds of such challenge were (1) because the original list (dated January 14, 1924) did not contain the names of all persons within Maricopa county qualified and liable to serve as jurors; (2) because the original list had not been revised from time to time so as to keep such list as complete as practicable; and (3) because the officers whose duty it was to select from such list the trial jurors for 1924 had struck therefrom the names of persons of African and Spanish blood.

After a trial of the challenge as is provided in section 1017 et seq. of the Penal Code, and after hearing the testimony offered by defendant in support thereof, it was disallowed, and a jury to try the case was impaneled. The clerk of the board of supervisors was questioned by the defendant, and testified that the jury list was made from registration books (of voters) of the various precincts of the county, leaving off those persons granted exemption from jury service, such as policemen and firemen, that he could not say that it was a complete list, but that he thought it was, and that the list had not been revised. The clerk of the court, a witness interrogated by defendant, testified that no discrimination against persons of African or Spanish blood was made in drawing the trial jurors for the year 1924. The original

list with the certificate of the clerk of the board of supervisors was offered in evidence, as the record shows, but only the certificate was admitted, with the privilege to defendant of substituting a copy therefor. Neither the original list nor a copy of such list is in the record here. We have nothing therefore to show that it was not a complete list, properly authenticated; and there was not a scintilla of evidence that persons of African and Spanish blood were discriminated against, either in selecting the list or the trial jurors therefrom for 1924. Counsel for defendant has undertaken to supply in his brief the certificate which he says was attached to the original list of jurors, but his statement is not evidence, and cannot be substituted for evidence. Neither in the oral evidence nor the written evidence on the issue is it shown that there was any material difference in the number of persons qualified and liable to serve as jurors in the county and the list as made out by the board of supervisors and certified by the clerk thereof. From the record as it appears the court's denial of the challenge was eminently proper.

The defendant on this question seems to be imbued with the idea that a literal compliance with paragraph 3522, *supra,* is essential, or else his constitutional and statutory rights have been denied him. A moment's reflection is enough to show how absurd such a contention is. Paragraphs 3515 and 3516, of the Civil Code make all male citizens of the United States, free from certain disabilities therein enumerated, who have resided in the county at least six months, eligible to jury duty. It is an absolute impossibility to include in the list of jurors for any given year the names of all persons within the county qualified and liable to serve as such under the present law. The legislature has not empowered the board of supervisors, or anyone else, to take a census of

such persons at the beginning of the year or at any subsequent time during the year, and if, as defendant contends, all persons qualified and liable to serve as jurors must be listed as such, and the jury trying him taken therefrom, and that he cannot lawfully be tried by a jury otherwise constituted, then we have a situation created by the legislature in which it is impossible to lawfully try a person charged with crime.

We take it that the provisions of the statute empowering and directing the board of supervisors to make a jury list and to place thereon all persons qualified and liable to jury service in the county is directory and not mandatory. 35 C. J. 268, § 225. Such, in effect, was the holding of this court in *Lawrence* v. *State, ante,* p. 247, 240 Pac. 863, for therein we held "that a literal fulfillment of the statute is [not] required." The list is required to contain such a large number of persons, not for the benefit of the accused so much as to distribute the burdens of jury duty over the whole citizenship. As was said by the Iowa court, passing upon a somewhat similar question, in *State* v. *Wilson,* 166 Iowa, 309, 316, 144 N. W. 47, 50:

"It is very plain that, in exacting the large lists from which to draw grand and petit jurors, the purpose was not to protect any right of defendant or other litigants. Qualified jurors might readily have been drawn from a fraction of the number listed. The primary object is to distribute the burden of serving on the jury equitably among the inhabitants of the country. *State* v. *Massey,* 2 Hill (S. C.), 379; *Sumrall* v. *State,* 29 Miss. 202. In the last case, after stating the facts, the court said: 'If, therefore, the name of any person already returned be omitted in the annual list, . . . or if the assessor should wholly fail to return an annual list as required by law, it will not vitiate the list of jurors, provided they are regularly drawn from the box No. 1; because the

persons so drawn have been legally returned and enrolled as competent jurors, and it is no objection to their competency that other persons who should have been added to the list, in order that they might bear their part of the burden of such service, have not been regularly returned. The question is: Have those persons who have been duly drawn from the box as jurors been duly returned and entered as persons liable to such duty? And, if this be answered in the affirmative, it would be absurd to say that they were illegal jurors, except so far as the individuals should be found deficient in the legal qualifications, to be tried by the court when they should be impaneled as a jury. If this view were not correct, the greatest inconvenience and confusion might frequently occur by the errors or delinquency of the returning officers, and the administration of justice be delayed or defeated by a narrow. and literal interpretation of the statute in violation of its true spirit and intent. It would be to apply a regulation which was merely intended to subject all persons in the county liable as jurors to the performance of that duty, and thus equalize the burden among the people, in such a manner as to render illegal persons duly returned, drawn, and impaneled, and thereby to embarrass and defeat the very system intended to be established. The defendant has not the right to be tried before any particular jury. All that he can demand is that his triers be legally qualified and be chosen from those designated in the manner prescribed by law to perform that service.''

See, also, 35 C. J. 257, § 204.

Likewise the duty of revising the list of jurors is directory, and a failure to perform the duty will not vitiate the venire, in the absence of bad faith or corruption on the part of the board of supervisors. 35 C. J. 267, § 223. Neither was it irregular to omit from the list the names of policemen and firemen, since they are exempt from jury service. 35 C. J. 262, § 216.

The defendant, not daunted by adverse rulings on the foregoing questions, then filed a petition asking the court to transfer his case to the federal court for the district of Arizona, and he assigns as error the court's refusal to make the order of transfer. We have recently determined the point against defendant's contention, and are entirely satisfied with our announcement of the law in that case. *Lawrence* v. *State, supra.*

It is next contended that Judge WINDES erred in calling a jury, because the record showed the case had not been properly assigned to him. We suppose it was intended by this assignment to question Judge WINDES' jurisdiction to try the case without an order from somebody transferring it to him. We have already shown how Judge WINDES got hold of the case. He is one of the three regular judges presiding over the superior court of Maricopa county. His power and jurisdiction to hear and determine any controversy pending in that court is coequal with that of the other two members. The fact that it might have been originally assigned to Judge PHELPS' division for trial, upon an arrangement among the three members constituting that court, did not have the effect of depriving the other two members of the power to try the case. We must conclude that Judge WINDES not only had jurisdiction of the case, but that he was not otherwise disqualified or the defendant would have indicated it.

The next assignment is that "the court erred in admitting incompetent, irrelevant, and improper evidence over the objections of the defendant." It will be noticed that this assignment covers a broad field. Just whose evidence, or what it was, is not indicated. After looking carefully through defendant's brief, we conclude that possibly this assignment is directed to a question propounded by the county attorney to de-

fendant's witness Pray. The question was, "And you know, as a matter of fact, that Tom Croaff at this time has withdrawn from this case?" to which the witness answered, "I don't know." At the time the defendant did not object to the question, but called for the record as the best evidence. No motion was made to strike the evidence. It was the contention of the defendant at the time, and is his contention here, that this tended to prejudice his rights before the jury. We think under the law he should have objected to the testimony to begin with, or, not having done so, should have moved that it be stricken. He did neither. We confess, however, that we are unable to see wherein such testimony could have prejudiced the defendant's rights.

It is next assigned that "the court erred in overruling defendant's motion for a new trial." This assignment is not specific enough to advise us what order or ruling of the court defendant wants us to review. It does not conform with section 2 of rule 12 of the court's rules.

It is contended that "the court erred in overruling defendant's motion in arrest of judgment." This assignment, we learn by reading defendant's brief, is based upon the fact that the trial was had "when there was no information on file and none had been properly substituted as required by law." It appears from the record that on July 1st, the day the case was set for trial, the clerk of the court could not find the original information. It had disappeared or been lost from the files some two or three days before, or at least it was first missed at about that time. This fact was disclosed to Judge STRUCKMEYER before he was disqualified, and it was understood he would enter an order substituting a copy for the lost original, but this was not done, probably because of the unexpected turn that resulted in his disqualification.

At all events, a true copy of the information was read to the jury without an order of substitution. Before the defendant was sentenced, the fact that he had been tried on a copy of the information was made known to the presiding judge, who thereupon took testimony that uncontradictedly showed that such copy was a true copy, and the court entered a *nunc pro tunc* order that it be filed as a substitute for the original information, as of July 1, 1924. That the action of the court is well sustained by the authorities we think is well settled. 31 C. J. 596, §§ 69, 70, and 71. In the language of the court in *State* v. *Grumer*, 96 N. J. L. 424, 115 Atl. 659:

"It would be an unfortunate state of affairs, and rather shock the sense of justice, if the trial court were without inherent power to substitute a copy of the indictment for one which disappeared through theft, fire, or otherwise, especially after a defendant had pleaded to such indictment."

We can conceive of no possible injury or harm to defendant because he was tried upon a copy of the information, or because the proof of its being a true copy was made after rather than before the trial.

Assignment No. 8 is directed at the court's refusal to discharge the jury because of an improper remark of the county attorney. The remark referred to was incorporated in a question to witness Perrit, the question being, "I will ask you if you didn't hear Mr. Speakman (assistant county attorney) say to Mr. Guernsey that Jim McElvey is pointing, meaning Guernsey, out to this cow thief right now." The question is somewhat involved, but, by reference to the context of this witness' testimony, we find that the invidious insinuation was directed at the witness himself. The court immediately reprimanded the county attorney and admonished the jury "to utterly disregard the question." The question was im-

proper. It was not, however, concerning defendant but one of his witnesses. The court's prompt and unequivocal direction to the jury to disregard it no doubt was observed by that body.

Assignment No. 9 is directed at the court's refusal to give instructions Nos. 2 and 6 requested by the defendant, and assignments 10 and 11 to instructions Nos. 6, 8, 9, 10, 11, 12, 13 and 14 given by the court. The instructions as given by the court were stenographically reported and bear no numbers corresponding to those complained of, and we have no way of identifying them. The defendant sought to justify his act as charged in the information on the ground of self-defense. We have examined the instructions as a whole, and are satisfied that they properly state the law applicable to the facts developed at the trial, and were as favorable to the defendant as the law and facts would justify. The instructions refused either contained incorrect statements of the law or were covered by those given.

The defendant offered to prove that witness Guernsey had been convicted by court-martial for desertion, for the purpose of impeaching his testimony. The refusal of the court to permit such offer is assigned as error. We think the general rule is that, if a witness has been convicted of a crime, it may be shown for the purpose of affecting his credibility, but we are unable to find where any court has ever held that a conviction by a court-martial for desertion may be shown for that purpose. Desertion is purely a military offense; it is not a crime under the general law; its character is such as not to involve moral turpitude or to indicate a disposition or trait that would make the witness' testimony questionable. We are of the opinion it was not error, considering the kind of conviction tendered, to refuse its admission.

The last assignment we refuse to try to discuss, because we do not understand it. It is as follows:

"The court erred in admitting its instructions of self-defense to an attack by the prosecuting witness, when there was evidence that the defendant was about to be assaulted by other persons as well."

While none of those we have reviewed are in accordance with the rules of the court, they, or most of them, do have the merit of perspicacity; that is, by tying them up with the arguments in the brief we were able to know about what was intended. It is not so with the last one.

After giving the whole record a very careful scrutiny and consideration, we are of the opinion that the defendant had a fair and impartial trial, and that he has no reasonable grounds to complain of the verdict and judgment of the lower court.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.