STATE *vs.* MICHAEL MANDELLA.

JULY 17, 1952.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J.  This indictment charges Michael Mandella and Edward F. Brennan with robbery committed upon the person of Albert Peloquin.  The defendant Mandella was tried separately and was convicted by a jury in the superior court.  Thereafter the trial justice denied his motion for a new trial and the case is before us on defendant's exceptions to that decision, to other rulings during the trial, and to certain portions of the charge.

The evidence for the state in substance shows the following among other facts.  On November 17, 1949, about midnight, Albert Peloquin, the complaining witness, was walking easterly on the south side of Fountain street in the city of Providence en route to his car, which was parked near the post office.  He was approached suddenly from the rear by the defendant on one side and defendant's companion Brennan on the other.  The defendant poked something into his back and ordered him into a taxicab which had come from the rear and was stopped at the curb.  The victim, who was frightened, was warned not to make an outcry, and after being urged into the cab he was driven to a clubroom, so called, on North Main street in the vicinity of the railroad overpass.

He was then ordered up a flight of stairs to a room, being kept· at all times between defendant and Brennan, and was told that he would not be hurt if he followed directions.  Because he was outnumbered the victim was frightened and followed directions.  In the room he was required to take off his coat, and defendant and Brennan went through his pockets and removed $2 and also took his Bulova wrist watch.  Mandella, being dissatisfied with the amount of money thus secured, told the victim in effect that he would be held until morning when he would be taken to the bank for a withdrawal of $200 to permit Mandella to go to Miami, Florida.  Mandella thereupon broke a glass and threatened to cut the victim to pieces if he made an outcry,

or disclosed what had happened, or failed to go through with the bank deal. Brennan then left the victim with Mandella and was expected to come back.

When Brennan had not returned defendant told the victim that he was also going out for about ten minutes but would return, and that he knew where the victim worked and would cut him to pieces if he disclosed what had happened. He was ordered to remove his shoes which were taken by defendant and were never returned. It was then about 7 a.m. and at the first opportunity the victim ran in his "stocking feet" from North Main street all the way to his car, driving it directly to his home in North Smithfield where, upon advice from his brother, he made a report of the occurrence to the police.

On the other hand the evidence for the defendant, including testimony by him and Brennan, tended to show in substance that the complaining witness was acquainted with defendant; that they had been drinking together at other times in certain cafes in Providence; that on that night after closing hours, about one o'clock, defendant and Brennan met Peloquin and all left together and went voluntarily to the so-called clubroom to have further drinks; that the victim at no time made an outcry; and that no weapons at any time were used against him and he received no physical injury. The defendant and Brennan denied specifically taking the money, watch or shoes, and defendant insisted that he had met the complaining witness previously and knew him under the assumed name of Paquin. According to them the whole complaint was a fantastic creation by Peloquin to provide himself with an explanation to his sisters of why he had remained out all night.

The defendant has prosecuted a bill of seventeen exceptions but has confined his brief in most instances to a mere general statement of each without providing real arguments and authority for his contentions thereunder. We do not consider that such treatment is the equivalent of briefing and arguing exceptions so as to escape the conclusion that

they have been waived. However, we have examined all of them, and in our opinion only exceptions numbered 3, 6, 8, 12, 15 and 17 need any discussion herein, the others being waived or of no merit.

Exception 3 is to the ruling of the trial justice overruling defendant's objection to an answer given by the victim on cross-examination concerning what he had told his brother about the incident of the same morning. This conversation took place so closely to the time of the escape from defendant and is so related to the witness' state of mind at the time of the alleged crime, which had continued during his captivity, that it was not wholly irrelevant. In any event we cannot say that it was prejudicial error. Exception 3 is overruled.

Exception 6 is to the court's ruling sustaining the state's objection to the following question asked by defendant's attorney in cross-examination: "At no time during the rendition of your testimony in court did you ever mention anything about Miami? * * * The Court: Do you have a transcript of the testimony?" The defendant contends that the court was erroneously under the impression that such evidence would be admissible in contradiction only if there were a transcript of testimony taken in the district court.

Apart from that, however, there was no foundation in the instant case to show that any inquiry had been made in the district court concerning Mandella's proposed trip to Miami as was inferred in the form of the inquiry herein objected to. Moreover, even if there were error in excluding that question there was no offer of proof by defendant to show by proper evidence that the witness had there answered in a manner which would amount to a contradiction and bear on his credibility. The exception is therefore overruled.

Under exception 8 defendant contends that it was error to sustain the state's objection to a question propounded by defendant to the victim concerning whether he had ever

480 signed the name "Albert Paquin" at the Crown Hotel. The information sought appears to be remote and irrelevant because whether he may or may not have stayed at the Crown Hotel under a different name at some earlier time would have no material connection with the real issue in the instant case. So far as it might bear on his credibility, there is no testimony to the effect that the victim had denied such fact and therefore its admission would not have contradicted him. Moreover there is evidence of the fact itself as testified to by another witness. The error, if any, is therefore harmless and this exception is overruled.

Exception 12 relates to the following question: "You are the same Edward Brennan, are you not, who, before the United States Army Court at Stormville, New York, on September 12th 1945, on a charge of A.W.O.L. from the Army for one hundred and fifty-six days was sentenced to five years by the United States Army? A. Yes, sir. * * * Mr. Rotondo: We move that the answer be stricken. The Court: On what grounds? Mr. Rotondo: That is not being a conviction under our law. The Court: I am sorry to disagree. I will allow the answer to stand and note your exception."

The defendant contends that only conviction for a crime involving moral turpitude is admissible to impeach a witness' character and credibility. In support thereof he cites 3 Wharton's Crim. Evid. (11th ed.) §1380, and the two cases referred to therein by the author, namely, *People* v. *Joyce,* 233 N. Y. 61, and *Midkiff* v. *State,* 29 Ariz. 523.

On the other hand the state argues that general laws 1938, chapter 537, §16, provides that a "conviction or sentence for any crime or misdemeanor may be shown to affect his credibility"; that under such comprehensive language it is not essential in this state that the conviction be for a crime of moral turpitude; and that a conviction of any prior crime or misdemeanor is admissible, citing *Brown* v. *Howard,* 43 R. I. 571. It is argued that the case of *People* v. *Joyce, supra,* does not involve a conviction and

therefore does not support the text of Wharton relied on by defendant. It is further contended that the *Midkiff* case was not under a statute as broad as the one which is applicable here; and that in any event a contrary position to the *Midkiff* case was taken in *Jordan* v. *State,* 141 Ark. 504, 510.

The law as to impeaching a witness by evidence of a conviction for a military offense has not yet crystallized. Apparently none of the cases cited involved the application under a statute like ours. Nor has any pertinent case arisen in this jurisdiction. At any rate we are of the opinion that in the circumstances we need not decide the question at this time. Assuming, without deciding, that defendant's view is correct and that no conviction by a military court for a purely military offense is a crime or misdemeanor that is admissible under our statute, the question still remains whether the refusal to strike such evidence was prejudicial to defendant.

In this connection it is to be noted that the conviction in question was not offered to impeach the defendant. Nor was it the only conviction offered by the state to impeach the witness Brennan. Here immediately following the evidence in question the same witness, in response to questions by the state, admitted that he had been previously convicted for two other offenses, one in Central Falls and the other in Providence. In view of such evidence, which was admitted without any objection by defendant, we cannot say that the mere admission of a military conviction was so material and influential with the jury in considering the other evidence of defendant's guilt as to constitute prejudicial error. This exception is overruled.

Exception 15 relates to a portion of the charge whereby defendant contends the trial justice permitted the jury to determine the issue on a mere preponderance of conflicting evidence rather than beyond a reasonable doubt. This contention extracts a statement out of context. Just before the portion complained of, the trial justice charged

specifically and unequivocally that the jury must find the defendant guilty of the charge beyond a reasonable doubt or bring in a verdict of acquittal. This requirement as to proof was again repeated at the close of the pertinent instruction so that it is not reasonable to conclude the jury could have been misled in that regard. Exception 15 is therefore overruled.

Exception 17 is to the denial of defendant's motion for a new trial. In this connection we have examined the evidence, which presented a clear conflict that was determinable largely upon the credibility of the witnesses. If the complaining witness is believed, the jury were justified in finding defendant guilty beyond a reasonable doubt. His evidence was straightforward and was not inherently improbable or inconsistent. The contention of defendant's counsel has been addressed largely to matters that were arguable to a jury. They saw and heard the witnesses as did the trial justice. On the conflicting evidence in the record and considering also the trial justice's denial of the motion for a new trial, we cannot say that such decision is clearly wrong.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*William E. Powers*, Atty. Gen., *Edward F. J. Dwyer*, Asst. Atty. Gen., for State.

*Ralph Rotondo, Michael Addeo*, for defendant.