ROBERT J. RHEA, Plaintiff in Error,

*v.*

THE STATE, Defendant in Error.

(*Knoxville*, September Term (May Session) 1960.)

Opinion filed May 26, 1961.

FRANKLIN PARK, Jefferson City, for plaintiff in error.

WALKER T. TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Robert J. Rhea, plaintiff in error, hereinafter referred to as the defendant, was convicted for murder in the first degree and sentenced to serve 30 years in the State Penitentiary for the murder of one Johnny Day of Hamblen County on May 19, 1960.

There are four assignments of error, one of which is that the evidence preponderates against the guilt of the accused and in favor of his innocence. The case made by the State is as follows: The deceased, Day, was a young man 23 years of age and married. He was crippled about the legs. On this day he left home wearing nothing but a pair of trousers and no clothing above his waist, on his way to meet a companion to go fishing. He met his companion, Terry Long, a man 46 years of age who was also a cripple, having lost one leg and having suffered an injury to the ankle of the remaining leg. They met at a beer place and Long had two or three bottles of beer before they started to a creek. They tried one creek without success and then moved over to another one called Bent Creek, at a point in the neighborhood of the home of the defendant. They had no weapons or knives of any

kind and had between them only one fishing rod and two chains on which to string fish. They parked Day's car near a bridge, walked about 100 yards up the creek and began to fish. About this time the defendant, carrying a 22-automatic repeater rifle, came up from the direction of his home, accosted them and began to curse the deceased stating that the deceased had sworn a lie against him. The deceased replied that he wanted no trouble and that he had not lied about anything. In an effort to avoid trouble the deceased and Long moved up the creek about 400 yards and began to fish again. Long was sitting on the bank of the creek baiting his hook when he heard Day say, "No R. J., no", and he looked around in time to see the defendant shoot the deceased in the chest with this rifle. The deceased fell backward into the creek apparently dead because no water was found in his lungs to indicate drowning. His companion started to get up from his position and go to his aid but the defendant immediately pointed the rifle at him and told him to sit down, which he did. Defendant then walked on down the creek and out of sight and Long ran to a nearby field where a man was operating a mowing machine and had him go for the officers of the law. When the sheriff arrived and the body of deceased was removed from the water he was still holding in his hand the fish stringer or chain on which he had been attempting to put a fish at the time he was shot.

█ Defendant told a rather incredible story about how the two men chased him and tried to cut him off and hem him in a bend of the creek and claimed that the deceased struck him over the head with the stringer and grabbed the barrel of his gun, causing the gun to fire the one shot and strike the deceased in the chest. It is not difficult to

understand how the jury failed to believe the defendant's testimony attempting to make these two unarmed crippled men the aggressors on the person of the defendant armed with a rifle such as heretofore described. This assignment is accordingly overruled.

Another assignment complains of the court's ruling refusing the defense the right to cross-examine the witness Terry Long about a bad conduct (not a dishonorable) discharge which he received in 1944 from the armed forces.

In the few decisions and text authorities available which are cited in the State's brief, the rule seems to be that for the purpose of impeachment of a witness a bad conduct or a dishonorable discharge is not admissible unless it is shown that the breach of military discipline involved acts of moral turpitude. *Midkiff v. State,* 29 Ariz. 523, 243 P. 601; *Henderson v. United States,* 6 Cir., 202 F.2d 400; *United States v. Tomaiolo,* 2 Cir., 249 F.2d 683; *Jordan v. State,* 141 Ark. 504, 217 S.W. 788; *Nelson v. State,* 35 Ala.App. 179, 44 So.2d 802; Wharton's Criminal Evidence, 11th Ed., Sec. 1380, 2266.

In the instant case it was not made to appear that the bad conduct discharge involved an act of moral turpitude. Hence, the trial judge was correct in his ruling. This assignment is accordingly overruled.

Another assignment of error complains of the exclusion of the testimony of a member of the Knoxville Police Department as to experiments made with reference to the distances at which powder burns might occur and might appear.

■ The rule as to the admission of such testimony is set out in *Hughes v. State,* 126 Tenn. 40, 148 S.W. 543, and cases cited therein. The fact that this officer testified that he did not know what type of powder was used in the weapon involved in the homicide and since admittedly there are different types of powder which react differently with reference to powder burns and in view of his further statement that there is a variation in each type of ammunition currently manufactured, we can not say that the trial judge was in error in excluding said testimony because the conditions were not shown to be the same or similar. The assignment is overruled.

The remaining assignment complains of the action of the court in permitting the State to cross-examine the sister of the defendant whom the State had called as a witness.

■ The district attorney general simply asked this lady if she had not stated to him and another person a few minutes before she was placed upon the stand certain material facts that were contrary to the testimony that she gave after she took the stand. The rule deduced from the cases in Gilreath's-Carruthers' History of a Lawsuit, Sec. 356, 393, top, is stated thus:

"If a party is surprised by the testimony of a witness called by him, the party may ask the witness about the prior contradictory statements made by the witness, to explain the apparent contradiction as to why he called him, but the party can not prove the prior contradictory statements by the testimony of other witnesses."

Among the later cases is *King v. State* 187 Tenn. 431, 435, 436, 215 S.W.2d 813, and *Turner v. State,* 188 Tenn. 312, 325, 219 S.W.2d 188, 194 citing the King case. In

both of these cases it is brought out that while impeachment of one's own witness is proper under the conditions stated, ''it is never competent to permit the jury to weigh oral testimony on the stand against pre-trial statements and make a selection of that which is credible'', or stated another way, any prior contradictory statements shown are not to be taken as evidence of the facts therein stated but are simply limited to the function of discrediting the witness.

We find no error and the judgment below is accordingly affirmed.

All concur.