## PAUL E. HUBER *v.* STATE OF MARYLAND

[No. 184, Initial Term, 1967.]

246

248

*Decided October 20, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and RUSSELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Elsbeth Levy Bothe* for appellant.

*S. Leonard Rottman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Richard J. Kinlein, State's Attorney for Howard County,* on the brief, for appellee.

RUSSELL, J., delivered the opinion of the Court.

Paul E. Huber was indicted by the Grand Jury of Baltimore City for kidnapping and rape. Upon request by the Appellant, the case was removed to the Circuit Court for Howard County. A Motion to Dismiss the first count of the rape indictment was granted, and the other indictments were consolidated and tried before a jury. The Appellant was convicted of common-law assault and kidnapping on May 25, 1966. After a Motion For New Trial was heard and denied, the Appellant was sentenced to fifteen years for kidnapping and five years for assault in the Maryland Penitentiary, the sentences to be served consecutively.

The Appellant raises the following contentions in his appeal from the above judgments:

1. That the use of the Appellant's military records were improper.

 (a) The Appellant's military court-martial convictions were not admissible for the purposes of impeachment.

(b) The State was not entitled to show the details of the court-martial convictions and to introduce the records into evidence.

(c) The Court did not adequately instruct the jury on the evidential use of the Appellant's military records.

2. The pictures and tracings introduced into evidence against the Appellant were inadmissible, because they were not subject to seizure, they were obtained through an illegal search and seizure, and they were not competent evidence.

3. The court erred in refusing to allow Appellant to inquire as to whether the prosecuting witness was under the effects of medication while testifying.

4. The court erred in refusing to allow the Appellant to impeach the testimony of the prosecuting witness through the testimony of other witnesses which would show prior inconsistent statements made by the prosecuting witness.

5. The court erred in holding the witness immune from impeachment generally on the ground that the Appellant made her his witness for purposes of laying a foundation for impeachment.

6. The court erred in ruling the fact and content of a telephone conversation between a witness and the prosecuting witness inadmissible under the hearsay rule.

7. The court erred in ruling the testimony of witnesses concerning occurrences between Appellant and his attorney inadmissible under the hearsay rule.

The Appellant met the prosecuting witness after she finished work at 1 a.m. on the morning of March 4, 1964. After stopping at a restaurant and a night spot, the Appellant drove to a place several blocks from the prosecutrix's home, where he left the car. After returning, he drove the car around the corner and stopped, claiming that he had to wait for his brother to bring some money. The prosecuting witness testified that after ten minutes, the Appellant suddenly grabbed her arms, gagged her with a handkerchief and Kleenex, and tied her arms with ropes procured from the glove compartment. The Appellant pushed the victim down in the seat and drove to a secluded area where they remained until dawn. The Appellant alternately

tied and untied the prosecutrix, but made no advances. He then drove to a motel, rented a cabin, and once inside, resumed his procedure of tying and untying the prosecutrix. During this time, he removed all of the prosecutrix's clothing, but left her feet tied, and made an unsuccessful attempt to have sexual intercourse with her. Sometime in the late morning, the Appellant helped the prosecutrix to dress and they left the motel. Upon reaching the residence of the prosecutrix, the Appellant unbound her arms, and, after warning her not to report the incident, allowed her to leave.

The uncle of the prosecutrix testified that she came to his home about 12 noon on the day the alleged offense occurred, and that she related the episode at that time. The prosecutrix went to work on the night of March 4, 1964, and did not report the incident until the next day, some thirty hours after its occurrence.

### 1.

In regard to that part of the Appellant's first contention which concerns the admissibility of the Appellant's court-martial convictions, the Court finds that such evidence, within the guidelines set down by this opinion, is admissible. The Appellant argues that the fact of convictions is not admissible, as the Appellant was convicted by a military tribunal, and there was no showing of whether or not the conduct of the court-martial provided due process of law to the Appellant. This particular issue is a point of first impression in Maryland, and the Court has reviewed the pertinent decisions of other jurisdictions in arriving at its conclusion.

*Wharton's Criminal Evidence,* 12th Ed., Vol. 3, Sec. 939, p. 375, states that:

> "Conviction by court-martial of a military offense or imprisonment for breach of military discipline involve no moral turpitude and cannot be shown to affect a witness's credibility."

*Wharton* cites *People v. Joyce,* 233 N. Y. 61, 134 N. E. 836, where the district attorney was permitted to inquire over objection and exception for two pages of the record as to whether the defendant was imprisoned while in the army in World War

I and as to whether he did anything there for which he was imprisoned. The Court said:

"The objection to that class of evidence was well taken. Assume that defendant had omitted to salute his superior officer and the latter ordered him to the guardhouse for a few hours, such omission might be considered a breach of military discipline rather than a crime and his brief detention in the guardhouse would scarcely be held equivalent to a conviction of a crime." (233 N. Y. at 71)

In *Midkiff v. State,* 29 Ariz. 523; 243 Pac. 601, also cited by *Wharton,* the defendant tried to impeach a witness by proving that the witness had been convicted by a court-martial for desertion. The Court, in ruling that such evidence was properly refused admission, stated:

"Desertion is purely a military offense; it is not a crime under the general law; its character is such as not to involve moral turpitude or to indicate a disposition or trait that would make the witness' testimony questionable." (29 Ariz. at 537)

The rule of law applied in the above authorities can be stated in more concise form by reference to three cases cited by Appellant. *Henderson v. U. S.,* 202 F. 2d 400 at 405-406 (6th Circuit Court of Appeals), held that cross-examination for impeachment purposes should be limited to showing convictions for felonies or crimes involving moral turpitude, and that the lower court erred in admitting evidence of court-martial convictions for absent without leave (AWOL) offenses. The Second Circuit held in *United States v. Tomaiolo,* 249 F. 2d 683 at 692, that a court-martial conviction for an AWOL offense was a breach of military discipline, and as such, was neither a felony or a crime involving moral turpitude. *Rhea v. State,* 347 S. W. 2d 486 (Supreme Court of Tennessee), citing *Henderson v. U. S.,* supra, and *U. S. v. Tomaiolo,* supra, held that:

"* * * the rule seems to be that for the purpose of impeachment of a witness a bad conduct or a dishon-

orable discharge is not admissible unless it is shown that the breach of military discipline involved acts of moral turpitude." (347 S. W. 2d at 487)

It seems, then, that in order for evidence of prior court-martial convictions of a witness to be admitted for the purpose of impeaching the witness's credibility, the conviction must involve an act of moral turpitude, which is not purely a matter of military discipline, and which is a crime under the general law.

The Court finds that Huber's convictions were admissible for the purposes of impeachment because a conviction for assault involves an act of moral turpitude; an "assault on a German national" is not purely a matter of military discipline, and assault is clearly a crime under the law of Maryland. See *Miller v. State,* 1 Md. App. 653.

The Appellant contends further that the details of the court-martial convictions are inadmissible, even if the fact of these convictions is to be admitted.

The record shows that the Appellant was asked on cross-examination whether or not he had ever been convicted of larceny. He answered that he had been convicted, that his conviction was reversed, and the State then confessed not guilty. On further cross-examination, the Appellant was asked:

"Q. Now, finally, Mr. Huber, you have indicated to the Court and jury that you have never been convicted, or you have never tied any other woman or forced any other woman. Is that correct?

"A. I answered a question to that effect. Yes.

"Q. Is it true or is it false?

"A. It is—that I had?

"Q. That you have.

"A. I will say I did not.

"Q. Have you been convicted of it?

"A. I was convicted of assault in the service.

"Q. How many times?

"A. Twice.

"Q. On a woman?

"A. Yes.

254

"Q. Did it involve the question of whether or not you tied her hands and tore her clothing off?

"A. I did not tear her clothing off.

"Q. I did not ask you what you did.

"A. Yes.

"Q. I asked you what the Court found you guilty of.

"A. Yes.

"Q. They found you guilty of tearing the clothing off of a woman and tying her wrists, is that correct?

"A. I did not tie her wrists, but this is the way the testimony went there.

"Q. That's what they found you guilty of?

"A. Yes, sir.

"Q. And that was in 1951.

"A. In Berlin, Germany.

"Q. And you were in the service from 1949 until approximately 1953.

"A. Yes, sir.

"Q. And again in 1950 you were charged with placing your hands over a woman's mouth.

"A. That was the charge.

"Q. And tearing her clothes.

"A. Yes, sir. No, I did not tear her clothes, no, sir.

"Q. I am not asking you what you did.

"A. I recall—do not recall exactly what the charge was. To my recollection the charge was assault, and that was all I was informed of.

"Q. Well, we're talking about the kind of assault.

"A. Well, I am telling you that I did not tear her clothes.

"Q. All right, but did they find you guilty of tearing her clothes?

"A. No, sir, all I told you is they found me guilty of assault. That was the simplest way it was put to me, in those terms.

"(Mrs. Bothe) Your Honor, I don't know if the record shows the objection of the defendant for rea-

sons which have been reviewed in chambers to the questioning regarding this—

"(Court) I don't think the record does show that, but it should.

"(Mrs. Bothe) I would take this opportunity to place it in the record.

"(Court) Just your objection to this line of questioning.

"(Mrs. Bothe) Yes, sir.

"(Court) The objection is overruled, for the record. Go ahead.

"Q. Reading from Section 13, Records of Trials by Court Martial, I read as follows: 'Did wrongfully strike German national (female) on the face, throw her to the ground and tear her clothing and bind her hands.'

"A. Well, I did not bind her hands. That was the charge that the lady made.

"Q. Were you found guilty?

"A. I was found guilty of assault. As I told you, that was the only information that was given to me, that I had been found guilty by Court Martial of assault on a German national.

"Q. Well, you hadn't for—

"A. No specific reason was given to me.

"Q. The date adjudged, 15 September 1950.

"A. It was 1950, yes, sir.

"Q. Now, directing your attention to February 8th, 1951, do you deny that you were charged and was found guilty of a similar offense?

"A. I do not deny I was found guilty of assault again, no, sir.

"Q. Why did you tell this Court and jury that you had never been charged and found guilty—

"(Mrs. Bothe) Objection.

"(Court) Well, he just said charged and found guilty. I think that's proper. Go ahead, Mr. Howard.

"A. It was my impression, sir, that a military record had no bearing in a civilian court. If I was in

error in that assumption, I would have answered the correct—the question you put to me correctly and truly. I would have, and it was my assumption on this grounds, simply that—

"(Mr. Howard) Thank you.

"(Court) Anything further, Mr. Howard?

"(Mr. Howard) Nothing further, Your Honor, please."

At the conclusion of the court's charge to the jury, the Appellant requested the following instruction which the Court denied:

"Secondly, I would request the Court on behalf of the defendant to advise the jury that the past convictions and the Court Martials, which the Court admitted into evidence, was merely as—can merely be applied against the credibility of defendant's testimony, and is not substantive evidence that the defendant was a person—a sick and dangerous person. I say this, particularly now, after hearing the summation by the State's Attorney, because the State's Attorney—in his parting words to the jury . . .—very clearly was urging the jury to find on the basis of the facts of his past convictions, particularly the Court Martials, that he did commit this crime, in other words, the using not as evidence against his credibility but as evidence that he is the kind of a person who would commit these types of crimes and should therefore be convicted in order to prevent further such activities."

It is established in this state that in criminal cases, where the defendant is a witness in his own behalf, he thereby puts his character in issue, and may be asked on cross-examination if he has been convicted of crime. *Taylor v. State,* 226 Md. 561 at 567. Article 35, Section 10, Annotated Code of Maryland, provides that in any proceeding, a party may prove by legal evidence any facts showing the conviction of the witness of an infamous crime. *M.L.E., Witnesses,* Section 143-144. While evidence of a defendant's prior convictions of crimes, other than that charged, need not be restricted to infamous crimes or crimes

involving moral turpitude in order to be admissible, such convictions should be for violations which may have some tendency to impeach the defendant's credibility as a witness. *Linkins v. State*, 202 Md. 212 at 220. As no rigid classification of crimes is possible, the court must exercise its discretion in admitting the fact of a criminal conviction, and its decision will not be interfered with on appeal, except where the evidence is so clearly irrelevant that its admission could not be said to be within the discretion of the trial court. *Linkins v. State*, supra; *Taylor v. State*, supra.

Article 35, Section 10, further provides that in order to prove a criminal conviction of a witness, it shall not be necessary to produce the record of the proceedings pertaining thereto, but a sealed certificate of the clerk of the proper court, stating the fact of conviction and for what crime, shall suffice. We find that the proper interpretation of Article 35, Section 10, would permit only the fact of conviction for a specific crime to be permitted into evidence, and not the details of the commission of the crime.

When the details of the commission of a prior crime by a witness are introduced into evidence, there is a danger that the jury may be misled into a conviction by evidence of an offense for which the defendant is not indicted, *Wentz v. State*, 159 Md. 161 at 165, and hence the introduction of such evidence should be subjected to rigid scrutiny by the court, *Berger v. State*, 179 Md. 410 at 414. To come within the exception to the rule that evidence of previous offenses is irrelevant, there must appear some real connection between the previous offense and that with which the defendant is charged other than the allegation that the offenses have sprung from the same disposition. The exception does not go to the extent of sanctioning the admission of evidence of the "propensity" of the accused to commit crimes similar to that for which he has been indicted. *Berger v. State*, supra; *Gorski v. State*, 1 Md. App. 200 at 202-203.

When only the fact of a prior conviction of a criminal defendant is introduced into evidence when he is a witness in his own behalf, there exists a similar, albeit somewhat lesser danger than that outlined above, of the jury drawing an improper

inference that the defendant may have a tendency to commit crimes similar to that for which he is being tried. In such a situation, the trial court should, upon proper request by the defendant, advise the jury that such evidence is to be considered only for the purposes of evaluating the defendant's credibility as a witness.

In the instant case, the prosecuting witness testified that the Appellant tied and untied her with ropes innumerable times; the State introduced tracings made by the Appellant of pictures portraying women bound and gagged, and the State was permitted, over objection, to introduce the details of the Appellant's court-martial conviction. The latter evidence revealed that the Appellant, while serving in the Army in Germany, was accused of tying up one woman and tearing the clothes off another woman. The admission into evidence of these facts, when considered by the jury with the other contested evidence showing the defendant's preoccupation with women in bondage, could only serve, at least in the absence of a proper cautionary instruction from the court to prejudice the jury unfairly against the Appellant and permit them to draw an inference that he did tie up the prosecuting witness.

It is incumbent upon the court, when requested in a criminal case, to give an advisory instruction on every essential question or point of law supported by the evidence. *Bruce v. State,* 218 Md. 87 at 97. The court finds that the trial court should have instructed the jury on the effect of the prior convictions of the Appellant as requested, and the failure of the lower court to so advise the jury constituted reversible error.

The Appellant further contends that tracings seized from him were inadmissible in evidence against him because: (1) they were seized without a warrant in the course of a general search not incident to arrest; (2) the tracings were not subject to seizure, (3) the evidence of the tracings were incompetent.

While this conviction is to be reversed for the reasons given in the preceding portions of this opinion, the question of the admissibility of the tracings, the Appellant's second allegation of error, should be decided for future guidelines if the Appellant is to be retried. *Schowgurow v. State,* 240 Md. 121 at 135. See *Bender v. Popp,* 246 Md. 65 at 73.

The record shows that a federal warrant for the Appellant's arrest was issued at the request of the State's Attorney for Baltimore City on March 17, 1964, thirteen days after the alleged offenses took place.

The arresting officers knocked on the door of the apartment in which Huber was residing on March 19, 1964, identifying themselves as plumbers. When Huber opened the door, Agent John C. Bonner identified himself as an FBI agent and placed the Appellant under arrest. Huber was dressed in pajamas, and he and the two FBI agents went into the bedroom in order to allow Huber to dress. While Huber was dressing, Agent Bonner searched the apartment and found some tracings under the bed.

The lower court held that the search and seizure was valid as a search incident to arrest, citing *Gross v. State,* 235 Md. 429, and that tracings were therefore admissible. The trial court also indicated by its affirmative response to a question asked by counsel for the Appellant that the evidence seized was relevant to the facts at issue.

There is no formula for the determination of the reasonableness of a search, *Gross v. State,* supra, at 439; the relevant test is whether the search was reasonable under all of the circumstances, for it is only unreasonable searches that are prohibited by the Fourth Amendment. *St. Clair v. State,* 1 Md. App. 605 at 617, citing *Carroll v. United States,* 267 U. S. 132. Whether a search and seizure is reasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. *St. Clair v. State,* supra, citing *Cooper v. California,* 386 U. S. 58.

This court finds that the search of Huber's Apartment was reasonable under the circumstances. In the instant case, the arresting FBI men had taken into custody a person accused of a somewhat bizarre sexual offense who had been hiding from the local law enforcement authorities for thirteen days (the FBI apparently had no knowledge prior to the arrest of the Appellant's avowed intention to surrender himself to the Baltimore City Police). The arresting agents were justified, under these circumstances, in searching for, at the very least, weapons or means of escape. (Agent Bonner testified that he searched

for "weapons of escape, contraband, fruits of the crime, instrumentality of the crime.") The right to search and seize without a warrant extends to things under the accused's immediate control and to an extent depending upon the circumstances of the case, to the place where he is arrested. One of the reasons justifying this exception to the general rule is the need to seize weapons and other things which might be used to assault an officer or effect an escape. *Gross v. State,* supra, at p. 440, citing *Preston v. United States,* 376 U. S. 364; *St. Clair v. State,* supra, at p. 612. Only a thorough search of Huber's bedroom could have insured the arresting officers that they had control of all weapons which could be used against them or to effect an escape.

We also find that the seizure of the tracings was valid under the circumstances of this case. The distinction made by some cases between seizure of items of evidential value only and seizure of instrumentalities, fruits, or contraband has been rejected by the Supreme Court in *Warden v. Hayden,* 387 U. S. 294. Justice Brennan, speaking for the majority of the Court, stated:

> "Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband. On its face, the provision assures the 'right of the people to be secure in their persons, houses, papers, and effects * * *,' without regard to the use to which any of these things are applied. This 'right of the people' is certainly unrelated to the 'mere evidence' limitation. Privacy is disturbed no more by a search directed to an instrumentality, fruit, or contraband. A magistrate can intervene in both situations, and the requirements of probable cause and specificity can be preserved intact. Moreover, nothing in the nature of property seized as evidence renders it more private than property seized, for example, as an instrumentality; quite the opposite may be true. Indeed, the distinction is wholly irrational, since, depending on the circumstances, the same 'papers and effect' may be 'mere evi-

dence' in one case and 'instrumentality' in another."
(387 U. S. at 301)

In setting forth the standard to be applied to seizures of items of evidentiary value, the court said:

> "The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities, or contraband. There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities, or contraband — between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required." (at p. 306)

While we agree, as indicated below, that the materials seized will not aid in Huber's conviction, we hold that the materials were legally seized, as these tracings were not of such a nature as to appear prima facie irrelevant to the issue of Huber's possible guilt. The mere fact that what the police find in a valid search relates not to an offense for which a person is being arrested does not vitiate the seizure. *Crowe and Williston v. State,* 240 Md. 144 at 151. Arresting officers, being neither lawyers nor judges, cannot be expected to make subtle distinctions between the degrees of relevancy of any evidentiary item which is not clearly irrelevant to the issue of the guilt of the accused. This is a problem capable of taxing the minds of the most experienced and learned jurists, and the remedy, if any, to be afforded a defendant in such circumstances is by way of suppression of such evidence before or during trial.

In all cases, civil or criminal, the evidence must be confined to the point in issue. *MacEwen v. State,* 194 Md. 492. The Court of Appeals stated in that case:

> "The application of the rule results in the exclusion of all evidence of collateral facts or of those which are incapable of affording any reasonable presump-

tion or inference as to the principal fact or matter in dispute; the reason being that such evidence tends to divert the minds of the jury from the real point in issue, and arouse their prejudices." (194 Md. at 501)

The tracings of women in various states of bondage can only show that the defendant liked to trace and draw pictures of women in bondage. This fact was admitted by the Appellant in his direct examination; however, one cannot rationally infer from these tracings that the Appellant did in fact bind and tie the prosecutrix, or even that he had a tendency to bind women with ropes. The admission of this evidence could only serve to arouse the prejudice of the jury against the Appellant by allowing them to draw such an improper inference. This evidence in no way tends to establish the facts at issue (the assault and kidnapping of the prosecutrix), and its admission constitutes reversible error.

*Judgments reversed; case remanded for new trial.*