## ALAN MARTIN POMS *v.* STATE OF MARYLAND

[No. 234, September Term, 1969.]

*Decided March 31, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Joseph A. DePaul* and *Joseph S. Casula* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, State's Attorney for Prince George's County,* and *Benjamin R. Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant Poms was found guilty by a jury in the Cir-

cuit Court for Prince George's County of unlawful possession and control of hashish, a narcotic drug, and was thereafter sentenced to three years under the jurisdiction of the Department of Correction. His primary contention on this appeal is that the hashish was seized from his bedroom during a warrantless search of his residence by police and was therefore illegally taken and improperly admitted in evidence at the trial over his objection.

Evidence adduced on appellant's pretrial motion to suppress the incriminating hashish showed that on August 29, 1968 at approximately 5:00 p.m., the police arrested one Claudia Keith on a bus and seized from her a quantity of LSD and marihuana. Immediately thereafter, the police secured a warrant to search the dwelling where she resided with her boyfriend John Schneider. Accompanied by federal narcotics agents, the police executed the warrant early that same evening. They seized a paper bag from a juvenile whom they found on the premises and discovered that it contained a quantity of LSD, marihuana and hashish. While Schneider was not found on the premises, the police discovered a note written to him to the effect that Keith had been arrested. Several officers remained on the premises, and at 11:00 p.m., Schneider returned to the dwelling with three friends, Carol Vizard, Charles Metzler and another person. Upon seeing the officers, Schneider drew a gun but was shot and critically wounded by one of the officers. Vizard was immediately interrogated at the scene by one of the federal agents. She told him that on the night of August 28, Metzler, acting under Schneider's direction, delivered 1,000 LSD capsules to the appellant Poms; that instead of paying $3,000.00 for them, as previously agreed, Poms robbed Metzler at gun point, pistol whipped him, and took the capsules; and that upon learning of the incident, Schneider planned to kidnap appellant's girlfriend and hold her until he secured return of the LSD believed to be held in the appellant's home. Thereafter, Vizard and Metzler were taken to police headquarters where further interrogation was conducted until 2:00

a.m. the following morning, in the course of which Metzler confirmed Vizard's statement of the robbery, and that Poms had taken the LSD capsules from him.

Sergeant Jack Hamilton, the County officer in charge of the investigation, testified that as the various news media monitored police radio calls, they were aware of the shooting incident and immediately began to press him for information. Hamilton stated that while he stalled the inquiring news media (which included two major Washington metropolitan newspapers), he was fearful that they would nevertheless obtain the information concerning the Schneider shooting and that Poms, in turn, would also learn of it. Hamilton testified that he knew Poms to be a supplier of narcotics; that he knew the address where Poms lived with his mother, father, and sister; that he had been there previously that year, had found narcotics on the premises, and had arrested Poms's sister at that time.[1] Based on his long experience as a police officer, Hamilton stated that one thousand capsules of LSD could be flushed down the toilet in twenty seconds. He testified that it usually took a minimum of four hours to obtain a search warrant. Considering the circumstances, Hamilton decided that the police did not have time to obtain either an arrest warrant or a warrant for the search of Poms's residence. County officers, accompanied by federal narcotics agents, went to Poms's residence, arriving about 3:00 a.m. They observed that the kitchen and upstairs lights were on in the house. According to the State's testimony, the officers knocked at the front door and announced their identity.[2] Appellant Poms came to the door but upon seeing the officers, he quickly retreated; shortly thereafter he returned and opened the door. As the officers entered, they told Poms that they

---

1. While Poms was also arrested at that time, he was not convicted; indeed, it does not appear from the record before us that Poms had any criminal convictions.

2. Evidence adduced by the appellant clearly indicated that the officers broke the front door and did not announce their purpose or identity. Sergeant Hamilton testified that he made an unsuccessful effort to force entrance through the back door.

were looking for a quantity of LSD capsules. He replied that the police were too late—that the LSD was on its way to New York. The officers then took Poms to the kitchen and a search of the house was then undertaken. One of the searching officers went immediately to Poms's bedroom, the location of which he knew from past experience, and found several milligrams of hashish on the dresser. A revolver was also found on the bed. The radio was on and playing.

At the conclusion of the evidence taken on appellant's motion to suppress, the trial judge noted that while there was no consent to the search, the police had probable cause to believe that Poms had perpetrated a robbery and currently possessed its fruits — the LSD capsules. The court held that it would have taken from two to four hours for the police to obtain a search warrant; that the news media was pressing for the details of the shooting, thus presenting "the very real probability that if this news went on the radio, the Defendant in this case would learn of Schneider's difficulty and he would have to conclude that the police would be on his trail very shortly." The court noted that LSD is easily disposed of by flushing down the toilet and that "[t]o give this Defendant any warning of the police intentions was to lose both the fruits of the crime and the evidence of its perpetration by this Defendant." The court concluded that the warrantless search was incident to a valid arrest and under the circumstances was not unreasonable in the constitutional sense.

Appellant does not appear to challenge the legality of his arrest.[3] He contends, however, that the search of his residence was violative of the search and seizure provisions of the Fourth Amendment because its scope ex-

---

3. As unlawful possession of LSD is a misdemeanor, Maryland Code, Article 27, Section 313B(a), an arrest for this offense not having been committed in the presence of police, would have required an arrest warrant to be lawful. But, as indicated, the trial judge found from the evidence that the arrest was lawful as having been made on probable cause to believe that appellant had committed the felony of robbery. See Boone v. State, 2 Md. App. 80; Edwards v. State, 7 Md. App. 108 (footnote 1).

tended to areas beyond the kitchen, this being the room in which he was arrested. He relies on *Chimel v. California*, 395 U. S. 752. Without question, the search of Poms's residence was an unconstitutional one under the principles announced in *Chimel*. *See Scott v. State*, 7 Md. App. 505. We have repeatedly held, however, that *Chimel* applies only to cases in which the prosecution seeks to introduce the fruits of a search conducted after June 23, 1969. *Jason v. State*, 9 Md. App. 102 (1970); *Pettiford v. State*, 8 Md. App. 560; *Scott v. State, supra.* As the search in this case was made on August 30, 1968, *Chimel* is not applicable and we decline to apply it, as urged by appellant, to cases like his which were still pending on June 23, 1969, the date of the *Chimel* decision.

We said in *Scott*, at page 510, that prior to *Chimel* the right to search and seize without a warrant as incident to a lawful arrest extends to things under the accused's immediate control and to an extent, depending upon the circumstances of the case, to the place where he is arrested; and that the extent of the search is not necessarily confined to the room in which the arrest was made. We think the record clearly demonstrates that the search of Poms's upstairs bedroom was made for the singular purpose of finding the fruits of the robbery, namely the LSD capsules; the search, therefore, was neither general nor exploratory in nature. Of course, it is settled that if the circumstances make an arrest lawful for one crime, there may be a reasonable seizure of goods in the possession or control of the person arrested, and a consequent right to use the articles so seized as evidence in a trial for a crime different from that which justified the arrest. *Johnson v. State*, 8 Md. App. 187; *Gamble v. State*, 2 Md. App. 271. On the facts of this pre-*Chimel* case, we believe that the search of Poms's bedroom was reasonable as incident to his lawful arrest made by the police upon entering the Poms's residence.[4] *See United*

---

4. It has long been established that probable cause for belief that certain articles subject to seizure are in a dwelling house cannot, of itself, justify a search thereof without a search war-

258

*States v. Rabinowitz*, 339 U. S. 56; *Harris v. United States*, 331 U. S. 145.

Appellant next contends that the search of his residence was constitutionally unreasonable because the police failed to obtain a search warrant. It has long been settled law that a search of a dwelling without a search warrant can survive constitutional inhibition only upon a showing that the surrounding facts bring it within one of the exceptions to the law that a search must rest upon a search warrant. *Stoner v. California*, 376 U. S. 483. *Scott,* as here, presented the question as to the admissibility of evidence seized substantially contemporaneously with the arrest of the accused in premises occupied by him. It was there contended that the search of the house without a valid search warrant was illegal. We held that a search made without a search warrant as an incident to a lawful arrest was, prior to *Chimel,* not illegal merely because there may have been time for the arresting officer to have procured a search warrant. Clearly, under the law in force at the time of the search of Poms's residence, the relevant test in determining the reasonableness of a warrantless search was not whether it was reasonable to procure a search warrant but whether the search was reasonable. *Cooper v. California*, 386 U. S. 58. Even had the police time to obtain a search warrant in this pre-*Chimel* case, (and the trial judge found that they did not) we would conclude that the search was not invalid for failure of the officers to seek and obtain a warrant to search Poms's home.

Appellant also contends that the trial judge erred in refusing to instruct the jury to disregard a witness's statement that appellant had previously been arrested. The record discloses that during the pretrial hearing on the motion to suppress evidence, it was brought out that

rant. *Jones v. United States*, 357 U. S. 493; *Agnello v. United States*, 269 U. S. 20. *See also Johnson v. United States*, 333 U. S. 10. Appellant here does not argue that there was insufficient evidence to support the trial judge's conclusion that the purpose of the police in going to Poms's residence was to arrest him for robbery and thereafter to search within the house for its fruits.

appellant and his sister had previously been arrested at their home and that narcotics had been found therein at that time. The trial judge cautioned the State's Attorney against making any inquiry during the trial concerning any prior arrests of the appellant—an admonition which the record indicates the State's Attorney scrupulously heeded. The appellant, during his cross-examination of Sergeant Hamilton, undertook to develop the fact of Poms's sister's arrest so to convey the impression to the jury that the hashish found by the police on August 30 may have been in her possession and control, and not that of appellant. The following colloquy ensued:

> "Q. Just answer my question now. Isn't it a fact, Sergeant Hamilton, that his sister had been arrested for narcotics on prior occasions?
> A. Yes, sir.
> Q. She had been charged with some narcotics violations, is that correct?
> A. Yes, sir, both of them"

Appellant moved for a mistrial. The trial judge denied the motion, stating "I think the answer if left alone at the present time, the jury may not connect this answer to the defendant." The record indicates that the trial judge believed Sergeant Hamilton's answer susceptible to the construction by the jury that the sister had been charged with narcotics violations, not only previously, but also for the August 30 offense.

At the conclusion of the evidence, the appellant submitted this requested jury instruction:

> "Evidence of any prior involvement, arrest or connection of the defendant to any other crime is irrelevant to the question of guilt in this case. You should only consider the facts of this particular instance in making your decision. Any reference by Sgt. Hamilton or anyone else to involvement of this defendant Mr. Poms

should be stricken and removed from your consideration."

The trial judge refused to give the proposed instruction "because I felt that the evidence didn't support it and it might be misleading to the jury and detrimental to the defendant"; and that "it might be more harmful than helpful."

It is, of course, incumbent upon the court when requested in a criminal case to give an advisory instruction on every essential question or point of law supported by the evidence. *Halcomb v. State,* 6 Md. App. 32; *Gordon v. State,* 5 Md. App. 291. In *Huber v. State,* 2 Md. App. 245, we held it was reversible error for the trial judge to refuse to instruct the jury, as requested, that prior convictions of crime are only to be considered as affecting the accused's credibility and not as substantive evidence of his guilt. In that case, involving a sexual assault, all the sordid details of a prior sexual assault were introduced in evidence and we concluded that the circumstances were such that the jury was likely to be seriously prejudiced absent the proper cautionary instruction requested by the accused. Unlike *Huber,* Sergeant Hamilton's answer did not show that appellant had been convicted of a criminal offense; at most it showed that he was previously charged with his sister for a narcotics violation.

Ordinarily, where the evidence entitles the accused to have the jury instructed on a particular point of law, the trial judge should not substitute his judgment for that of the accused's counsel in determining whether the requested instruction is in the best interests of the accused. It is apparent in this case that appellant's counsel did not share the trial judge's view that Sergeant Hamilton's answer would not necessarily convey the thought to the jury that appellant had been previously charged with violating the narcotics laws. But on the record before us, we cannot say that the trial judge committed reversible error in holding firm to his belief that the allegedly ob-

jectionable answer was subject to the interpretation he placed on it. It was, in effect, his conclusion that the granting of the requested instruction would unnecessarily and improperly focus the jury's attention on the fact, not otherwise supported by the evidence before it, that appellant had in fact been involved in and arrested for a prior narcotics violation. Giving due consideration to the fact that the trial judge is in the best position to evaluate the prejudicial impact on the jury, if any, of allegedly inadmissible evidence, we hold that the trial judge's refusal to instruct the jury, as requested, did not, under the circumstances of this case, constitute reversible error.

*Judgments affirmed.*