657 A.2d 402

**Timothy John ELLISON**

v.

**STATE of Maryland.**

**No. 1188, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

April 28, 1995.

Michael S. Libowitz (Thomas & Libowitz, P.A. on the brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and John L. Scarborough, State's Atty. for Cecil County, Elkton, on the brief), for appellee.

Submitted before WILNER, C.J., and ALPERT and FISCHER, JJ.

WILNER, Chief Judge.

Appellant was convicted in the Circuit Court for Cecil County of murder and use of a handgun in a crime of violence. He was sentenced to life imprisonment without the possibility of parole on the murder charge and to five years imprisonment, concurrent, on the handgun charge. He presents five questions on appeal, of which we need consider only one:

Did the circuit court err by refusing to give a requested jury instruction?

We find that the court erred and shall remand.

### FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of March 12, 1993, appellant saw Dino J. Fanucci at Killian's Bar in Rising Sun. He held a gun

to Fanucci's head and said "You shouldn't have said what you said." Fanucci responded "I didn't say anything. Cool it." Appellant then shot and killed Fanucci. He was arrested later that morning.

On September 1, 1993, a plea of not criminally responsible by reason of insanity was entered on appellant's behalf, following which the court ordered the Department of Health and Mental Hygiene to conduct a preliminary examination of appellant. The doctor who examined appellant on an outpatient basis under that order advised the court that appellant "may meet the legal test for being found not criminally responsible" and recommended that appellant be fully evaluated on an inpatient basis at the Clifton T. Perkins Hospital Center (Perkins). Dr. E. Cameron Ritchie, fellow in forensic psychiatry at Perkins, and Dr. Michael G. Sweda, staff psychologist at Perkins, reported to the court on December 23, 1993, that, in their opinion, appellant suffered from delusional disorder, persecutory type, and was not criminally responsible.

The State then moved to have appellant examined by Dr. Michael K. Spodak, a private forensic psychiatrist, as to criminal responsibility. Over objection, the court granted the motion. Dr. Spodak's opinion was that, while appellant did suffer from delusional (paranoid) disorder, persecutory type, he did not lack substantial capacity to appreciate the criminality of his conduct or conform his conduct to the requirement of law and thus did not meet the legal requirements for being found not criminally responsible.

In addition to Drs. Ritchie and Sweda, Dr. Sheri Bellow, a psychologist in private practice and former director of admissions at Perkins, and Dr. Stephen W. Siebert, a psychiatrist in private practice and former Acting Superintendent of Perkins, testified for the defense. All four testified that they had examined appellant and found him not criminally responsible.

Dr. Spodak testified in rebuttal that he agreed with the other witnesses that appellant suffered from the persecutory type of delusional (paranoid) disorder, that he was delusional at the time of the shooting, and that he was not feigning

mental illness. He testified further, however, that, in his opinion, appellant was criminally responsible.

The jury found that appellant was criminally responsible and, as noted above, that he was guilty of murder and of use of a handgun in a crime of violence.

## DISCUSSION

### The Requested Jury Instruction

At the close of evidence, appellant's trial counsel, citing *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982), asked the court to instruct the jury that "[t]he psychologist and psychiatrist at Clifton T. Perkins are deemed to be impartial experts and not of the defense or state." The following exchange ensued:

"THE COURT: I am not going to give them that. You [apparently addressing the State's Attorney] want me to?

[STATE'S ATTORNEY]: No.

[COUNSEL FOR APPELLANT]: I am offering that. That's repeated through the Court of Appeals decision.

[STATE'S ATTORNEY]: Judge, that's probably dicta because it's not material to the case.

THE COURT: All right, if you object I won't do it. What they usually do is say they are deemed independent when somebody else wants a private psychiatrist, is how it usually goes. They are on your side. You are beyond that point.

[COUNSEL FOR APPELLANT]: Perkins on my side?

THE COURT: That will hurt you if you say they are independent.

[COUNSEL FOR APPELLANT]: Perkins is on my side, yes, they certainly are."

At the conclusion of the instructions, appellant renewed his request, and it was again denied. He argues now that the court erred.

Md.Rule 4–325(c) provides:

"The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."

The requirements of the rule are mandatory: "a trial judge must give a requested instruction that correctly states the applicable law and that has not been fairly covered in instructions actually given." *Mack v. State*, 300 Md. 583, 592, 479 A.2d 1344 (1984). In deciding whether a trial court was required to give a requested instruction, an appellate court "must determine whether the requested instruction constitutes a correct statement of the law; whether it is applicable under the facts and circumstances of this case; and whether it has been fairly covered in the instructions given." *Id.*

The State does not contend that the requested instruction was covered in the instructions actually given. Nor does the State contend that the requested instruction was an incorrect statement of the law. As appellant's trial counsel indicated, the Court of Appeals held in *Johnson v. State*, 292 Md. 405, 414, 439 A.2d 542 (1982), that psychiatrists on the staff of Perkins Hospital, although paid by the State, are "independent psychiatric experts," and not

" 'partisans of the prosecution, though their fee is paid by the State, any more than is assigned counsel for the defense beholden to the prosecution merely because he is . . . compensated by the State. Each is given a purely professional job to do—counsel to represent the defendant to the best of his ability, the designated psychiatrists impartially to examine into and report upon the mental condition of the accused.' "

*Id.* (quoting *McGarty v. O'Brien*, 188 F.2d 151, 155 (1st Cir.), *cert. denied*, 341 U.S. 928, 71 S.Ct. 794, 95 L.Ed. 1359 (1951)). The *Johnson* Court therefore held that the trial court's refusal to provide a defendant with a private psychiatric expert of his

own choosing at State expense did not deny him his right to assistance of counsel, due process, or equal protection, when a Perkins psychiatrist had found him competent and responsible. *Id.* at 412–415, 439 A.2d 542. *See also Thomas v. State,* 301 Md. 294, 324, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985) ("Perkins' psychiatrists are deemed to be wholly impartial experts and not partisans of the prosecution....").

■ The State's contention is rather that the *Johnson* holding was not the "applicable law" under the circumstances of appellant's case. The State cites *Chambers v. State,* 337 Md. 44, 650 A.2d 727 (1994), in which the Court of Appeals held that a trial court did not err in refusing to instruct a jury that it could return a recommendation of mercy. *Id.* at 46–47, 650 A.2d 727. The Court reasoned that the provision that a jury may recommend mercy is not "the applicable law" because "[w]ith the exception of death penalty and insanity cases, the sole function of the jury in a criminal case in Maryland is to pass on whether the defendant is guilty as charged, a decision based on the evidence presented at trial and the law pertaining to the case." *Id.* at 48, 650 A.2d 727. Because, with the exception of death penalty cases, "the mission of the jury is to evaluate guilt, not set punishment, mercy is not an 'essential question' before it," and the court is, therefore, not required to give an instruction about mercy on request. *Id.* at 48, 650 A.2d 727 (quoting *Sims v. State,* 319 Md. 540, 550, 573 A.2d 1317 (1990)). The State contends that "[w]hat constitutes 'applicable law' is the law pertaining to the crime" and that "[t]he proposed instruction at issue here is in no way related to the elements of the crime or the standard for determining Ellison's lack of criminal responsibility." The definition of "applicable law" is not, however, so narrow.

In *Gooch v. State,* 34 Md.App. 331, 337, 367 A.2d 90 (1976), *cert. denied,* 280 Md. 735 (1977), we held that a trial court had erred by not instructing the jury as requested on "the effect and weight to be given to character testimony as such." In *Huber v. State,* 2 Md.App. 245, 256–58, 234 A.2d 264 (1967), we found that a trial court had erred by refusing a request for an

instruction that the defendant's prior convictions were to be considered only in "evaluating defendant's credibility as a witness." *Id.* at 258, 234 A.2d 264. In *Christiensen v. State,* 274 Md. 133, 141, 333 A.2d 45 (1975), the Court of Appeals held that the refusal of the trial court to instruct the jury, as requested, that no unfavorable inference could be drawn from the defendant's failure to call an accomplice as a witness was error. In none of those cases did the requested instruction relate to the elements of the crime or to the defendant's criminal responsibility. All those instructions related to the jury's consideration of particular evidence (or, in *Christiensen,* lack of evidence), as did the instruction requested here.

■ As the *Chambers* Court said, "the mission of the jury is to evaluate guilt." *Chambers,* 337 Md. at 48, 650 A.2d 727. The Court said further that

"[t]he main purpose of a jury instruction is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict.... '[A] defendant is entitled to an instruction on every essential question or point of law supported by evidence.' "

*Chambers,* 337 Md. at 48, 650 A.2d 727 (quoting *Sims v. State,* 319 Md. 540, 550, 573 A.2d 1317 (1990)). "In a criminal jury trial, it is the jury's province to assess the credibility of witnesses and to weigh all of the evidence." *Joyner–Pitts v. State,* 101 Md.App. 429, 445, 647 A.2d 116 (1994). An instruction, such as that requested in *Gooch,* that correctly states a principle of law that may provide guidance for the jury's deliberations with regard to weighing the evidence or assessing credibility states "applicable" law and must be given on request.

■ In this case, there was a "battle of experts" as to whether appellant was criminally responsible at the time of the shooting. The relative weight the jury gave to Dr. Spodak's testimony as against that of the four defense experts and the jury's assessment of each expert's credibility were clearly "essential questions" in relation to their determination

of appellant's criminal responsibility. The trial court was of the opinion that it would "hurt" appellant if the jury was instructed that the experts from Perkins were impartial, apparently thinking that otherwise the jury would tend to believe that Perkins staff members would, if anything, favor the State. Appellant's counsel, however, was apparently of the opinion that the jury would give more weight to the testimony of the two doctors from Perkins, who testified as defense witnesses, if it knew that they were impartial. It was not for the court to weigh what would or would not "hurt" appellant; once counsel asked for the instruction, the court was bound to give it if it stated the applicable law. It did.

█ Because the relative weight the jury gave to the opinions of the experts may well have been important to its finding that appellant was criminally responsible, we cannot say that the court's error was harmless beyond a reasonable doubt, and shall remand for a new trial.

JUDGMENTS REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; CECIL COUNTY TO PAY THE COSTS.