JORDAN *v.* STATE.

Opinion delivered January 12, 1920.

1. GRAND JURY—DISCRIMINATION AGAINST AFRICAN RACE.—Where the jury commissioners selected electors to serve on the grand jury panel who possessed the statutory qualifications without reference to race or color, it was not error to refuse to discharge the regular panel on the ground that the African race had been discriminated against.

2. CRIMINAL LAW—CHANGE OF VENUE—CREDIBLE WITNESSES.—It was not error to deny a petition for change of venue where the examination of the supporting witnesses disclosed that they had heard a few men in several places in the county express animosity toward accused.

3. HOMICIDE—MURDER IN SECOND DEGREE—EVIDENCE.—Evidence *held* to warrant verdict of murder in the second degree.

4. WITNESSES—CROSS-EXAMINATION OF ACCUSED.—In a prosecution for murder there was no error in permitting accused to be asked on cross-examination concerning his conviction by court-martial for desertion while in the service in the army, as a defendant who takes the witness stand is subject to the same rules of evidence and impeachment as any other witness, and may be impeached by drawing out that he has been guilty of acts of moral turpitude, and especially of crime which reflects upon his integrity or credibility as a witness.

5. CRIMINAL LAW—HARMLESS ERROR.—An instruction in a homicide case which was applicable only to murder in the first degree was without prejudice where the jury convicted of murder in the second degree.

6. CRIMINAL LAW — INSTRUCTION — CIRCUMSTANTIAL EVIDENCE. — Where the State's main dependence was upon direct, and not circumstantial, evidence, there was no error in not embodying in an instruction the usual cautionary rule that circumstances must be consistent with guilt and inconsistent with innocence, as that rule is applicable only where the State relies entirely upon circumstantial evidence.

7. CRIMINAL LAW—INSTRUCTION—NECESSITY OF OBJECTION.—Where appellant made no objection below that an instruction was erroneous in failing to caution the jury as to circumstantial evidence, and offered no request for instruction on that point, he can not complain of the omission.

8. CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—It was not error to refuse a requested instruction that was covered by another instruction given by the court.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; affirmed.

*A. A. Poff, P. S. Seamans* and *X. O. Pindall,* for appellant.

1. The verdict is not supported by the evidence. The evidence is overwhelming that the deceased was the aggressor and completely to blame for his death and that he made a murderous assault on defendant.

2. It was error to refuse a change of venue, and the court abused its discretion in refusing. The petition and supporting affidavits were made according to law and the supporting witnesses were credible.

3. The court erred in allowing the State to ask defendant and requiring him to answer that he had been convicted of desertion from the United States Army. 70 Ark. 610; Underhill on Ev., § 246.

4. It was reversible error to give instruction No. 29 for the State on the law of abandonment of a combat. 63 Ark. 286.

5. No. 27 for the State was also error, as it improperly declared the law of circumstantial evidence.

6. The instructions to which defendant was most entitled were refused and nowhere covered. 64 Ark. 147.

7. The motion to discharge the panel should have been sustained. 10 Otto 322.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. The question of abandonment of the combat and defendant's theory was submitted to the jury on proper instructions, and the jury by their verdict have settled the matter and the evidence supports the verdict.

2. The change of venue was properly denied. No proper showing was made. The witnesses were not shown to be credible persons. Kirby's Digest, § 2318. An order overruling a motion for change of venue on appeal is conclusive unless it appears the court abused its discretion. 98 Ark. 139; 85 *Id.* 536; 121 *Id.* 87; 103 *Id.* 70; 80 *Id.* 360. See also 85 *Id.* 514; 100 *Id.* 218; 125 *Id.* 597.

2. There was no error in the cross-examination of defendant as to his desertion. 75 Ark. 548; 114 *Id.* 239; 74 *Id.* 397; 100 *Id.* 199; 103 *Id.* 87; 100 *Id.* 321; 106 *Id.* 362.

3. There were no errors in the instructions. 104 Ark. 397; *Bost* v. *State,* 140 Ark. 254; 114 Ark. 398; 100 Otto 322.

HUMPHREYS, J. Appellant was indicted in the Drew Circuit Court for murder in the first degree for killing Sandy Haskell.

When the Drew County Circuit Court convened on the second Monday in September, 1919, a motion was filed in behalf of appellant to discharge the regular panel of the grand jury upon the ground that the African race had been discriminated against by the jury commissioners in the selection of a grand jury, in that no negroes were selected to serve. In response to the ground set forth in the motion, the jury commissioners gave testimony to the effect that they selected the jury with a view to getting electors of approved integrity, sound judgment and reasonable information, without regard to race or color. Over the objection and exception of appellant, the motion was overruled by the court.

Appellant then filed a petition for a change of venue, upon notice and in form required by law. Peter Phillips, William Henderson and John C. Jackson were the affiants to the petition. Their credibility as supporting witnesses was tested by an examination before the court concerning their knowledge of the prejudice existing in the minds of the inhabitants of Drew County against appellant. The sum total of their evidence was that they had heard a few people in Baxter, Blissville, Cominto, Monticello, Collins, Selma and Tillar express the opinion that since appellant had returned from France he was an upstart, did not care what he did and should be sent to the pen. It was admitted that the qualified electors in Drew County numbered 4,114, and that five-sixths of the qualified electors live in territory not visited by said affiants. Over the objection and exception of appellant, the court declined to grant a change of venue, and the cause proceeded to a hearing, which resulted in a conviction for murder in the second degree and a sentence to the State penitentiary for twenty-one years. From the judgment of conviction and sentence, an appeal has been duly prosecuted to this court.

Appellant, a negro twenty-nine years of age, served in the army in 1917-18 and '19. In January, 1918, he was convicted by a court-martial for desertion. After appellant's return to Drew County, on the morning of July

21st, he went in company with Homer Lewis, a boy fourteen years of age, to the Dabney place to hunt his father's horses. While on the place, near Will Graham's home, Sandy Haskell, a younger and larger negro, appeared with a shotgun and began to berate and threaten to kill appellant and his father, charging appellant with having mistreated and drawn a gun on him a few days before. Appellant denied having abused or assaulted Sandy, assumed a conciliatory attitude toward him, and during the controversy succeeded in getting behind a nearby tree. Sandy continued to abuse and threaten appellant, going to the extent of challenging him to draw his gun and come from behind the tree. At this juncture there is a conflict in the testimony on the part of the witnesses for the State and those for appellant. Upon the part of the State, Jessie Graham testified that she heard a shot which was fired after Sandy Haskell had started away from appellant in the direction of his home; J. D. Whitacre that he heard the shot, immediately turned his head and observed appellant holding a pistol around the tree and Sandy running from him (appellant) toward the witness; Dr. A. S. J. Collins, a graduate physician, experienced in surgery, that he examined the dead body of Sandy Haskell and found that death resulted from a gunshot wound that severed a large artery in the leg; that the ball from the gun entered from the back part of the right leg and came out just to one side of the knee cap.

The witnesses upon the part of appellant testified that when appellant fired the fatal shot, Sandy Haskell was pointing his gun in the direction of appellant, abusing, threatening to kill and challenging him to draw his gun and come from behind that tree.

It is insisted that the court committed reversible error in overruling the motion to discharge the regular panel of the grand jury. The allegation of discrimination against the African race by the jury commissioners in the selection of the grand jury is unsupported by evidence. On the contrary, it is established by the undisputed

evidence that the jury commissioners selected electors to serve on the panel who possessed the statutory qualifications without reference to race or color. 'The court did not err in overruling the motion.

It is next insisted that the court committed reversible error in overruling the petition for change of venue. One of the statutory requirements of affiants to a petition for a change of venue is that they shall be credible persons. Kirby's Digest, section 2318. One test of credibility within the meaning of that word, as used in the statute, is the knowledge of the affiant concerning the subject of inquiry. If he lacks knowledge, or is wanting in information as to the state of mind of the inhabitants concerning an accused, then the court would be warranted in finding that he is not worthy of belief on the question of whether the minds of the inhabitants of a county are so prejudiced against the accused that he cannot obtain a fair and impartial trial in the county. *Dewein* v. *State,* 120 Ark. 302. The affiants in the instant case were examined by the court, touching their credibility as witnesses in reference to the state of mind of the inhabitants of the county toward appellant. They had heard only a few men in a limited number of places in the county express any animosity or ill will toward appellant. We think the examination revealed a lack of knowledge on the part of affiants of the state of mind toward appellant of the citizens of a considerable portion of the county, much less of all portions of the county. The examination revealed that affiants were without any information concerning the state of mind of the citizens toward appellant in almost the entire county. Their knowledge was meager indeed, being limited to only a few people in a few localities in the county. There was no abuse of discretion of the court in denying the petition for change of venue under the particular facts in this case.

A reversal is insisted upon because the verdict is not supported by the evidence. Appellant's theory is that the entire evidence disclosed that Sandy Haskell was the aggressor and that appellant fired the fatal shot in nec-

essary self-defense. While there was much evidence tending to establish this theory, there was substantial evidence tending to show that Sandy Haskell had abandoned the difficulty and started home when appellant shot him. Jessie Graham testified that he had started away from appellant in the direction of his home when the shot was fired. J. D. Whitacre testified that immediately upon hearing the shot, he turned his head and Sandy was running away from appellant. Dr. A. S. J. Collins testified that deceased was shot from behind. The evidence just related is wholly inconsistent with the theory of appellant and entirely consistent with the theory of the State. Had the deceased been walking around the tree, pointing his gun at appellant and threatening to kill him when the fatal shot was fired, it is next to impossible to see how the ball could have entered from the rear, instead of on the side or in the front. In walking around the tree with his gun pointed at appellant when the fatal shot was fired, the deceased must necessarily have presented his side or front toward appellant. The entry of the ball behind the knee cap and its exit to the side of the knee cap, necessarily placed deceased's back, and not his front or side, toward appellant when he fired the shot that resulted in the death of Sandy. The verdict is sustained by sufficient substantial evidence.

It is insisted that the court committed reversible error in permitting the State's attorney to ask, and appellant to answer, concerning his conviction by a court-martial for desertion while in service in the army. A defendant who takes the witness stand is subject to the same rules of evidence and impeachment as any other witness. A witness may be impeached by drawing out of him on cross-examination that he has been guilty of acts of moral turpitude, and especially of crime, which reflect upon his integrity or credibility as a witness. *Hollingsworth* v. *State*, 53 Ark. 387; *Vance* v. *State*, 70 Ark. 272; *Hunt* v. *State*, 114 Ark. 239; *King* v. *State*, 106 Ark. 160.

It is insisted that the court committed reversible error in giving instruction No. 29, because it improperly

declared the law of abandonment, as applied to a combat. It is unnecessary to set out this instruction or to comment upon it further than to say it had application only to murder in the first degree. Appellant was not convicted of murder in the first degree, and therefore suffered no prejudice by the instruction if it carried the error insisted upon.

It is insisted that the court committed reversible error in giving instruction No. 27, which is as follows: "You are instructed that evidence is of two kinds, namely, direct and circumstantial, or that any fact in the case, or any element of the crime charged, may be proven by either kind or by both kinds of evidence; and if any fact in this case or any element necessary to constitute the crime charged have been established to your satisfaction beyond a reasonable doubt by either direct or circumstatial evidence, or by both kinds, then such fact or element has been sufficiently proven, and if upon consideration of all the facts proved in the case you believe beyond a reasonable doubt that the defendant is guilty, it is your duty to so find."

The vice contended for in the instruction is that it did not contain the usual cautionary rule applicable to circumstantial evidence to the effect that the circumstances must be consistent with guilt and inconsistent with the innocence of an accused. The cautionary rule contended for is only applicable in cases where the State relies entirely upon circumstantial evidence for a conviction. In the instant case, the State's main dependence was upon direct, and not circumstantial, evidence. Appellant, however, is in no position to complain if the cautionary rule, as applied to circumstantial evidence, was omitted from the instruction, because he made no suggestion that the instruction was erroneous for this reason, nor did he request an instruction on the point. *Price* v. *State,* 114 Ark. 398.

Lastly, it is insisted that the court committed reversible error in refusing to give appellant's request No. 7, which is as follows: "The court instructs the jury

that if Haskell, deceased, came up near to where the defendant was and attempted to shoot the defendant or to do him greatly bodily harm, the law in that case does not require him to retreat or withdraw, and he may stand his own ground and defend himself, and, if need be, kill his assailant, and such would be justifiable homicide, and the defendant is entitled to acquittal at your hands.''

No error was committed in refusing to give the above instruction, because the court had already given it in substance in other instructions, especially instruction No. 4, requested by appellant and given by the court, which is as follows: "If you find from the evidence that at the time of the shooting of the deceased, Haskell, he, the said Haskell, was in the act of committing a murderous assault upon the defendant, Jordan, you are instructed that the said Jordan was under no obligation of law to retreat, but was justified if he stood his ground, and, if, necessary to save his life or prevent the said Haskell from inflicting on him great bodily harm, kill the said Sandy Haskell.''

No error appearing in the record, the judgment is affirmed.