**People of the State of Illinois, Plaintiff-Appellee,
v. James F. Helm, Defendant-Appellant.**

**Gen. No. 66–38.**

**Third District.**

**June 14, 1967.**

Peter Denger, of Rock Island, for appellant.

Richard Stengel, State's Attorney, of Rock Island, for appellee.

ALLOY, J.

Defendant James F. Helm was indicted for murder committed by stabbing with a knife. On trial by jury, the jury found him guilty as charged and the court entered judgment and sentenced him to a term of 14 to 40 years. Defendant appeals to this court asserting error in (1) admission of evidence of a prior conviction of defendant by a court-martial, (2) reading of the court-martial conviction of a noninfamous crime to the jury, and (3) prosecutor referring to the conviction of such crime in final argument.

The record discloses that defendant was involved in what is described as "an altercation" in a tavern. He was seen to take a knife out in the tavern and place it at the throat of one individual. The defendant in company with others then went outside the tavern. Af-

ter defendant had gone outside the tavern, he was then seen to stab one Milton Pearson with a knife. Defendant's brother testified that defendant said to him immediately thereafter, "I think I cut him."

Defendant took the stand and testified in his own behalf in the trial of the cause. The State then introduced the record of a 1952 court-martial conviction of defendant for the purposes of impeachment. The court-martial consisted of two charges. Charge I specified that the defendant together with two other persons did on or about April 20, 1952, by means of putting him in fear, steal from the presence of a certain Japanese National, "against his will, approximately three hundred (300) Yen." Charge II specified that defendant, together with two other persons, did on the same date, commit assault upon another named Japanese National, "By stabbing him in the left arm with a dangerous weapon likely to produce grievous bodily harm, to wit: a knife." Charges I and II were part of the same transaction involving a robbery and assault on two brothers. Defendant was convicted on both charges. On the trial of the cause before us, counsel for defendant objected to the admission of the court-martial conviction on the ground that the court-martial conviction did not contain the necessary elements of an indictment and trial by jury, and that Charge II of the court-martial was not for an infamous crime. In ruling on the objection, the trial court indicated that the State could introduce evidence showing that defendant was convicted of the offense in the nature of an infamous crime under the laws of the State of Illinois and that he was sentenced and that it was a general court-martial. The State's Attorney then read both charges in the court-martial to the jury.

Only after counsel for defendant had made mention of the court-martial conviction in final argument, the State's Attorney in reply referred to such conviction and

stated specifically, "I want to say to you, ladies and gentlemen, that this is introduced for the purpose of affecting his credibility and this is the only purpose of it. The purpose is not to rest this case of 1965 on that conviction, but the purpose of this conviction shown you in 1952 is so you will be in a better opportunity to weigh this man's testimony, the defendant when he took the stand, the same man who told you today that yes, he did give a different statement the night of the crime and the next day, but it was because the police got it down all wrong."

It is argued on appeal that the use of the court-martial conviction as affecting the credibility of defendant, was improper since the court-martial differs very substantially from civilian criminal action. The case of Getz v. Getz, 332 Ill App 364, 369, 75 NE2d 530, is cited in support of this position. In that case, which was a divorce action in 1947, the Appellate Court concluded that conviction of a military desertion was not conviction of such felony or infamous crime that would constitute grounds for divorce.

In United States v. Price, 258 F2d 918, a contention was made that even though the Pennsylvania procedure with respect to the admission of evidence of prior convictions in first degree murder cases is constitutional, the record of a court-martial conviction was not evidence of a prior conviction, within the meaning of that term. The contention was specifically made that since the conviction was not the judgment of a civilian criminal court because of the nature of a court-martial proceeding, the constitutional safeguards present in a civilian trial were lacking. The court stated specifically that the answer to this argument is that it is settled that the judgment of a court-martial is to be accorded the same finality and conclusiveness, as to the issues there involved, as the judgment of a civilian court. Other states have au-

thorized the use of court-martial conviction for impeachment purposes (Ewing v. State, 174 Neb 90, 116 NW2d 7; Nelson v. State, 35 Ala App 179, 44 So2d 802).

In Burns v. Wilson, 346 US 137, 97 L Ed 1508, the court declared that a Federal District Court has power, on a military prisoner's application for habeas corpus, to review claims of fundamental unfairness in the process by which the applicant's guilt was determined, where the military courts have manifestly refused to consider such claims. The court therein referred to the fact that there was a new Uniform Code of Military Justice which was enacted (in 1951) to meet objections and criticisms lodged against court-martial procedures. It then concluded that military courts, like the state courts, have the same responsibilities as do the Federal courts to protect a person from a violation of his constitutional rights.

██ ██ It is noted that the court-martial referred to in the case before us took place in the year 1952 after the enactment of the Uniform Code of Military Justice in 1951. It appears that in the cause before us, the State's Attorney did not read to the jury the defendant's conviction of being A. W. O. L. since it was conceded that this was not an infamous crime on the precedent of the Getz case. In the court-martial under consideration by us, defendant was convicted of a crime which is infamous in the State of Illinois, that is, robbery. It is our conclusion, that, for purposes of impeachment, court-martial convictions of infamous crimes should be accorded the same finality as a judgment of a civilian court. The conviction of a defendant of an infamous crime of robbery could clearly be used for impeachment.

██ The question arises whether the reading to the jury of the remainder of the charge which referred to the stabbing of the Japanese National was prejudicial error under the circumstances. Infamous crimes, as indicated in People v. Kirkpatrick, 413 Ill 595, at 597,

110 NE2d 519, do not include the simple assault or battery. While it can be construed from the record that the court authorized only the reading of Charge I, the record shows that the State had contended that Charges I and II should be read together as constituting armed robbery. Since the second charge concerned itself with a transaction at the same time, it is suggested it could be rightfully concluded that we should look to the gist of the crime and not what it is called in a foreign jurisdiction in determining whether the crime is infamous and that it should, therefore, be admissible for impeachment purposes.

Another problem with which we are concerned in determing the basic issue is whether the State's Attorney improperly argued the prior convictions of the defendant to the jury. It is noted that defendant's attorney, in his closing argument, was the first to refer to the court-martial conviction in the first instance. It was only in reply that the prosecutor mentioned the conviction but also pointedly advised the jury that it was introduced exclusively for the purpose of affecting defendant's credibility. The jury was properly instructed regarding the use of the former conviction and they were also advised prior to the reading of the conviction resulting from the court-martial that it was competent only for the purpose of impeachment.

■ ■ While we do not believe that Charge II should have been read to the jury or have been the subject of comment and argument, in view of the record we do not believe that such reading or comment justifies a reversal of this cause. There was substantial evidence introduced in the trial of the cause showing the use of a switchblade knife by defendant in the tavern and also to the effect that defendant stabbed the deceased. The conviction shown as Charge I of the court-martial was properly admitted into evidence. On the basis of the record, such error as existed relating to Charge II of

the court-martial, is not an adequate basis for reversal (People v. Squires, 27 Ill2d 518, 190 NE2d 361).

In view of the record in this cause, we do not believe that the reading of Charge II to the jury and the comment of the State's Attorney in reply to defendant's counsel's argument would justify a reversal.

Affirmed.

STOUDER, P. J. and CORYN, J., concur.