(No. 40860.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JAMES F. HELM, Appellant.

*Opinion filed May 29, 1968.*

PETER DENGER, of Rock Island, appointed by the court, for appellant.

RICHARD STENGEL, State's Attorney, of Rock Island, (FRANKLIN S. WALLACE, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant, James F. Helm, was convicted of murder by a jury in the circuit court of Rock Island County and sentenced to a term of 14 to 40 years imprisonment. The appellate court affirmed (84 Ill. App. 2d 322), and we granted leave to appeal to consider (1) whether it was proper to use Helm's military court-martial conviction of an infamous crime to impeach his credibility after he testified on his own behalf during his murder trial and, (2) whether it was reversible error for the prosecutor to read a copy of the defendant's court-martial conviction for a non-infamous crime to the jury and to refer to that conviction again in final argument.

On the night of the murder of Milton R. Pearson, Jr., the defendant was involved in an altercation in a tavern where both men were drinking. Several State witnesses who were patrons of the tavern at the time in question testified that they saw the defendant place a knife at the throat of a companion of the deceased during a struggle. Threats were exchanged by the parties who then went outside the tavern where an eyewitness testified the defendant stabbed Pearson. Defendant's brother testified that immediately after the stabbing defendant said to him, "I think I cut him."

During the trial of this case the defendant took the

stand in his own defense. In order to impeach his credibility as a witness, the State offered the record of his 1952 court-martial conviction when he was in the Army. The record included two counts: count I accused the defendant of stealing approximately three hundred Yen from a Japanese National against his will "by putting him in fear", and count II accused the defendant of committing an assault on another Japanese National "by stabbing him in the left arm with a dangerous weapon likely to produce grievous bodily harm, to-wit: a knife." The robbery charged in the first count and the armed assault charged in the second count both occurred at the same place, on the same day and were committed by defendant and another against two Japanese Nationals named Yoshida, so that it appears that the robbery and assault were part of the same transaction. Defendant was found guilty on both the robbery charge which is an infamous crime under our statutes (Ill. Rev. Stat. 1965, chap. 38, par. 124—1), and the armed assault charge which is not considered an infamous crime in this state. The prosecutor sought to introduce both the robbery and assault convictions to impeach the defendant on the theory that they constituted elements of one transaction.

Outside of the presence of the jury defendant's attorney objected to admission of the robbery conviction because it lacked the elements of an indictment and a jury trial, and to the admission of the assault conviction because it was not an infamous crime and could therefore not be used for the purpose of impeachment. The judge ruled that the State could present evidence of conviction of the offense which was infamous in nature. When the jury returned the prosecutor read the record of both convictions, and only after the jury retired did defense counsel comment, "In other words you got the assault in too, which is not an infamous crime."

During final argument to the jury defendant's counsel claimed that the State had used the court-martial convic-

tions to bolster a "very weak case" by trying to convince the jury that the defendant was guilty of murder "because of something he did in 1952." To this charge the prosecutor responded in his summation as follows: "[H]e [defense counsel] said that because we have such a weak case we presented to you a conviction of this man for robbery, but robbery with a weapon, a knife, and a stabbing that occurred some years ago. Well, I want to say to you, ladies and gentlemen, that this is introduced for the purpose of affecting his credibility and this is the only purpose of it. The purpose of this is not to rest this case of 1965 on that conviction, but the purpose of this conviction shown you in 1952 is so you will be in a better opportunity to weigh this man's testimony, the defendant when he took the stand, the same man who told you today that yes, he did give a different statement the night of the crime and the next day, but it was because the police got it down all wrong. Sure I signed it, but they must have changed it since I signed it. Now, ladies and gentlemen, this is the case, of course, and this is the same man who in 1952 was sentenced 5 years and 6 months in the federal penitentiary at Leavenworth because of the robbery of a man in Japan and a stabbing in the arm. And then he says it is a weak case."

The main thrust of the defendant's initial argument is that his military court-martial conviction for an infamous crime was so lacking in the normal constitutional safeguards which attend civilian criminal proceedings that such a court-martial conviction could not properly be used to impeach his credibility when he took the witness stand at his murder trial. The defendant cites passages from *Getz* v. *Getz*, 332 Ill. App. 364, 369, and *Reid* v. *Covert*, 354 U.S. 1, 37, 1 L. Ed. 2d 1148, 77 S. Ct. 1222, 1241, which emphasize the procedural distinctions between criminal actions brought in military and civilian courts. However, when the actual holdings of those cases are analyzed it appears that *Getz* stands for the proposition that a con-

viction for desertion during time of war does not constitute a statutory ground for granting a divorce in this State because such a conviction is neither an infamous crime nor a felony; and *Reid* v. *Covert* establishes the rule that the court-martial jurisdiction of United States military tribunals could not constitutionally be applied in times of peace to allow military courts to entertain capital cases brought against dependents of armed forces personnel overseas. These cases therefore do not support the defendant's theory that a court-martial conviction for an infamous crime may not be used for impeachment purposes against a defendant in a subsequent civilian criminal proceeding, and neither the defendant nor our research has led us to any case so holding.

We find it significant that at the time of Helm's court-martial conviction for robbery the Uniform Code of Military Justice (10 U.S.C. pars. 801-940), governed the disposition of his case. This code was enacted in 1950 as a response to alleged military injustices occurring under the court-martial system during World War II, and it affords military personnel most of the constitutional rights guaranteed civilians. (Note, Constitutional Rights of Servicemen Before Courts-Martial (1964), 64 Colum. L. Rev. 127, 136; Bishop, Civilian Judges and Military Justice: Collateral Review of Court-Martial Convictions (1961), 61 Colum. L. Rev. 40, 56-67.) Specifically, the UCMJ grants the enlisted man accused of a serious crime the right to be provided with defense counsel who is a member of the bar, and the right to demand that at least one third of the members of the military court be enlisted men (10 U.S.C. par. 825(c)(1)); it expressly prohibits compulsory self-incrimination (par. 831), entitles the accused to a copy of the charges (par. 835), and affords him the right to compel the attendance of witnesses and the production of evidence on his behalf (pars. 846-48); the code defines arrest and pretrial procedures (pars. 807-14, 830-35), as

well as the elements of offenses cognizable by courts-martial (pars. 877-934), and it provides an extensive system for appellate review. Pars. 859-76.

The case of *Burns* v. *Wilson* (1953), 346 U.S. 137, 97 L. Ed. 1508, 73 S. Ct. 1045, makes it apparent that the defendant's 1952 court-martial conviction could have been challenged by a *habeas corpus* petition in the Federal courts if the defendant had been deprived of fundamental constitutional rights. (See Warren, The Bill of Rights and the Military (1962), 37 N.Y.U.L. Rev. 181, 188.) In view of the nature of the procedural rights accorded to military personnel by the Uniform Code of Military Justice and the scope of review intimated in *Burns,* we hold that the defendant's 1952 court-martial conviction for rob- · bery was subject to sufficient safeguards to allow its proper use for purposes of impeachment at his murder trial, and this view is supported by decisions in several sister jurisdictions. At least three states hold that a court-martial conviction is of sufficient bearing on a criminal defendant's credibility to warrant its admission in the criminal proceeding if the accused chooses to testify. (*Erving* v. *State,* 174 Neb. 90, 116 N.W.2d 7; *Nelson* v. *State,* 35 Ala. App. 179, 44 So. 2d 802; *Jordan* v. *State,* 141 Ark. 504, 217 S.W. 788.) Court-martial convictions have also been held admissible in criminal actions (1) as evidence of prior convictions to aid in the determination of the proper penalty to be imposed (*United States ex rel. Thompson* v. *Price* (3d cir.), 258 F.2d 918; *People* v. *Calderon* (Cal. App.), 23 Cal. Rptr. 62), (2) as evidence of a conviction for a felonious offense which requires a parolee to be returned to serve the remainder of the maximum sentence for his previous felony (*Florance* v. *Donovan,* 283 App. Div. 153, 126 N.Y.S. 2d 642), and (3) as evidence of conviction of a crime punishable by imprisonment for a term exceeding one year to support an action for transporting a firearm in interstate commerce. (*United States* v. *Lee* (D. N. Dak.), 227 F. Supp.

450.) In none of these instances did the court of decision feel that a court martial conviction should be accorded less force than a comparable conviction by a civilian court, and similarly we find that Helm's court-martial conviction for robbery was properly used for impeachment in this case.

It is undisputed that only convictions of infamous crimes may properly be shown for impeachment of criminal defendants in this State. (*People* v. *Kirkpatrick,* 413 Ill. 595; *Bartholomew* v. *People,* 104 Ill. 601; see Ill. Rev. Stat. 1965, chap. 38, par. 124—1.) However, we do not believe that the admission of defendant's court-martial conviction for assault constituted reversible error in light of defense counsel's failure to renew his objection when the prosecutor read the record of that conviction to the jury and again referred to it in final argument. In view of the overwhelming evidence pointing to the defendant's guilt, as well as the presence of the record of his prior robbery conviction which was properly before the jury, we hold that the erroneous use of evidence of Helm's conviction for a non-infamous crime was not so prejudicial in nature as to require reversal. The cases cited by the defendant are inapposite to the factual situation in this cause. In *People* v. *Shook,* 35 Ill.2d 597, we held the admission of evidence of Shook's prior burglary conviction was reversible error because that prior conviction had been set aside by us in a subsequent *habeas corpus* proceeding. The *Shook* decision expressly points out that the voided burglary conviction which was improperly used to impeach the defendant's credibility was "the only evidence of a prior infamous crime." (35 Ill.2d at 600.) In the instant case, however, Helm's assault conviction was merely cumulative evidence of his unreliable character in addition to the damaging evidence of his robbery conviction which was properly before the jury. In *People* v. *Kirkpatrick,* 413 Ill. 595, the admission of evidence of a non-infamous crime to impeach the accused was only one of "numerous errors" which caused us to reverse the defend-

ant's conviction, and that case also lacked any other evidence of a prior conviction which would have been competent for impeachment purposes. *People* v. *Flynn*, 8 Ill.2d 116, and *People* v. *Kosearas*, 408 Ill. 179, are similarly not binding authority because those cases turned on the impropriety of eliciting evidence of a defendant's criminal record by questioning him during cross-examination and thereby, in essence, compelling him to testify against himself when an authenticated copy of the record was never admitted.

In the instant case defendant's counsel objected to the introduction of the record of Helm's assault conviction and the trial judge correctly ruled that only evidence of infamous crimes could be shown to impeach the defendant's credibility. After this ruling by the court the prosecutor proceeded to read the record of Helm's robbery and assault convictions. We think that it would have been appropriate for defense counsel to have renewed his objection to the admission of the record of the assault conviction, and we do not fault the court for failure to intervene on its own motion after having once correctly ruled on the question. Certainly the defendant may not now raise the impropriety of the prosecutor's reference in closing argument to the assault conviction, since defense counsel failed to raise a timely objection in court. (*People* v. *Donald*, 29 Ill.2d 283; *People* v. *Sinclair*, 27 Ill.2d 505.) "An accused may not sit idly by and allow irregular proceedings to occur without objection and afterwards seek to reverse his conviction by reason of those same irregularities." *People* v. *Ford*, 19 Ill.2d 466, 478—9.

In conclusion, we hold that the evidence presented against the defendant at trial so strongly indicated his guilt beyond a reasonable doubt that any error in the admission of his assault conviction cannot be regarded as prejudicial to the extent of requiring reversal. Several prosecution witnesses testified to seeing the defendant hold a knife at

the throat of a patron in a tavern. An eyewitness testified to seeing the defendant stab the deceased outside of the tavern shortly thereafter, and the testimony of Helm's brother recounted the defendant's admission: "I think I cut him." In substance, the only defense offered was the defendant's denial of having a knife in his possession and his assertion that he did not recall making the statement which his brother attributed to him. "It is not our policy to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error." (*People* v. *Armstrong,* 22 Ill.2d 420, 424.) The erroneous admission of incompetent evidence in this case is not ground for reversal where other impeaching evidence of a prior conviction was properly admitted and proof of guilt was clear. See, *People* v. *Armstrong,* 22 Ill.2d 420, 424; *People* v. *Tranowski,* 20 Ill.2d 11, 17; *People* v. *Marmon,* 389 Ill. 19, 34; *People* v. *White,* 338 Ill. 33, 34; *People* v. *DePew,* 237 Ill. 574, 579-80.

Finding no reversible error, we affirm the judgment of the appellate court.                          *Judgment affirmed.*