THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM MOYER (Impleaded), Defendant-Appellant.

Fourth District   No. 14500

Opinion filed June 9, 1978.

CRAVEN, J., dissenting.

Richard J. Wilson and Gregory K. Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Donald R. Parkinson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

This case comes on appeal from a jury trial finding defendant guilty of armed robbery. Defendant argues three issues on appeal: (1) That he was not convicted beyond a reasonable doubt; (2) that the State's impeachment of defendant by use of his theft and forgery convictions was error since the theft conviction had been previously reversed; and (3) that defense witness, Roderick, was improperly impeached by hearsay.

Sometime after 8:45 p.m. on November 17, 1976, defendant Moyer, Phillip Roderick, and Steven Watson were riding in defendant's car looking for one of defendant's friends. The three men had been drinking. Defendant was driving, and at Roderick's suggestion, he pulled the car into an alley behind an Eisner store. Roderick testified that he went into the store to get some snacks. Watson also left the auto.

Defendant testified that he thought he saw a friend's car pass by so he pulled out of the alley to follow it. After a few minutes, he realized he was mistaken and returned to the alley. Watson and Roderick were running down the alley and got into defendant's car. The two men seemed upset. As defendant was leaving the alley, he noticed a police car slam on its brakes as it passed by. Defendant testified that he panicked because he had liquor in the car, and he ordered that it be thrown out the window. Someone threw the liquor container out the window and it landed close to the police car. Defendant then sped away and ran a stop sign and a red light. Finally, defendant stopped the car and all three men fled on foot.

Defendant testified that he did not know Roderick was going to commit the robbery and Roderick did not inform him that he had committed a robbery after he returned to the car.

Other witnesses testified that during the robbery defendant's car was parked in the alley with the lights off.

Roderick testified that he had pleaded guilty to armed robbery and that defendant was not aware that he, Roderick, had a gun in his waist the entire evening. The gun was concealed by Roderick's coat. Roderick also stated that Watson didn't know that Roderick was going to rob the store. When Roderick and Watson left defendant's car and walked towards the Eisner store, Roderick instructed Watson to stand outside the door while Roderick went inside. When questioned why Watson had to wait outside, Roderick stated that he didn't want to be seen in public with Watson because Watson was drunk. When Roderick left the store both he and Watson ran to the alley, but defendant's car was gone. A moment later, he saw defendant's car and got into it. When Roderick was arrested by the police, he had a gun and a paper sack containing the money from the store.

After Roderick was given immunity, he admitted that he had lied to the police when he told them that he bought the gun used in the robbery. Roderick testified that defendant's brother lived next door to defendant and he learned from the defendant that defendant's brother had a gun. Roderick was visiting the defendant a few days before the robbery and defendant left to go to the store. While alone, Roderick went next door into the bedroom closet and stole the gun. Roderick said he had a hunch where to look and defendant didn't know that he had taken the gun. Roderick stated that he had lied to the police to avoid a burglary charge.

According to Officer Mattingly, shortly after arrest defendant denied stopping in the alley to let anyone out of his car and he denied knowing Roderick. Defendant told Mattingly that only he and Watson were in the car. Defendant asked the officer if he was being arrested for throwing the beer can out of the window.

Defendant now argues on appeal that he was not proved guilty beyond a reasonable doubt because a reasonable hypothesis of innocence existed in that defendant was waiting for his companions to return from the store, unaware that they had just robbed it.

Of course, it is the function of the jury to judge the credibility of the witnesses and to resolve conflicting factual issues. (*E.g., People v. Miller* (1975), 27 Ill. App. 3d 788, 327 N.E.2d 253, *cert. denied* (1976), 424 U.S. 925, 47 Ill. Ed. 2d 334, 96 S. Ct. 1136.) Defendant and Roderick both claim defendant's innocence. Nevertheless, there is sufficient evidence to affirm the jury's verdict.

■■ Flight from the scene of the crime may, at times, be probative of guilt. (McCormick, Evidence §271 (2d ed. 1972).) Defendant explained his flight by stating that he panicked and threw out the liquor in the car. Yet, there was no explanation as to why the mere passing of a police vehicle would so alarm defendant to make him think that the police would stop his car. Defendant's conduct in speeding away, running through a stop sign and a stop light at a busy intersection, and finally

abandoning his car, could reasonably have indicated to the jury that an innocent man would not take such grave risks for simply possessing liquor in his car. The evidence also indicated that shortly after arrest defendant denied that he knew Roderick or that Roderick was in his car. The jury was not bound to accept defendant's and Roderick's testimony in light of the evidence to the contrary. Defendant was proven guilty beyond a reasonable doubt.

After both sides rested, the trial judge read to the jury defendant's convictions for forgery and theft over $150. In a previous case, *People v. Moyer* (1971), 1 Ill. App. 3d 245, 273 N.E.2d 210, we overturned defendant's theft conviction, but affirmed the forgery conviction. Defendant now argues that the trial court erred in allowing the introduction of the theft conviction which had been reversed on appeal.

Initially, we note that defense counsel did not object at the time the convictions were read to the jury. At the hearing on the post-trial motion, defense counsel informed the court that he had only recently become aware of the reversal of the theft conviction. The trial court found the error to be harmless and denied a new trial.

■■ We recognize that the introduction of a conviction that has been reversed on appeal may not be used for impeachment (*People v. Shook* (1966), 35 Ill. 2d 597, 221 N.E.2d 290), and while members of this court have recently disagreed on what crimes may be used for impeachment of a witness (*People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058), it is clear that the crimes of theft and forgery are acceptable under the rule of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. Compare *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064, with *Wright*.

Defendant argues that the *Shook* case indicates that reversible error occurred here. In *Shook*, the defendant was impeached solely by a voided conviction. In the present case, defendant was impeached by a voided conviction and a valid conviction. In such instance, the erroneous admission of a prior conviction is not grounds for reversal where other impeaching evidence of a prior conviction has been properly admitted and proof of guilt is clear. *People v. Helm* (1968), 40 Ill. 2d 39, 237 N.E.2d 433; *People v. Scott* (1967), 89 Ill. App. 2d 413, 232 N.E.2d 478; *cf. People v. Bey* (1969), 42 Ill. 2d 139, 246 N.E.2d 287.

In *Helm*, as in the present case, defendant failed to make a timely objection to the introduction of the improper conviction, and the court held that the evidence was merely cumulative with the introduction of the proper conviction. Therefore, when at least two convictions are introduced for impeachment, one improperly admitted and the other properly admitted, the purpose of impeachment, *i.e.*, attacking the truth and veracity of the witness, has been fulfilled by the valid conviction.

■■ Since an unquestionably valid conviction was presented to the jury, the allowance of the additional evidence of the voided theft conviction equates to harmless error.

Next, defendant asserts that the trial judge erred in the State's attempt to impeach Roderick. The controverted testimony was as follows:

"Q. Do you recall Mr. Parker [the police officer] telling you that about a statement which he had obtained from a Steve Watson?

A. Yes, he did. [Defendant's objection overruled.]

Q. And did Detective Parker tell you what Steve Watson had told him concerning the incident which happened at Young's Eisner the night before? [Defendant's objection overruled.]

A. He told me what Steve Watson was supposed to have told him.

Q. Okay. And did he ask you whether that was true or not?

A. Yes, he did.

Q. And did you say it was?

A. No, I didn't.

Q. Did you then tell him, Detective Parker, that you didn't want to talk about it because you knew you were going to the pen and had to live there, the guys at the pen didn't think too much of guys who told on someone else?

A. No, I didn't.

Q. What did Detective Parker tell you that Steve Watson told him?"

Defense counsel's objection to the last question was sustained as hearsay and the jury did not hear the substance of the conversation alluded to. In an offer of proof outside the presence of the jury, the State informed the court that, according to Parker, Watson had confessed and implicated Mr. Moyer as to his knowledge that the robbery was going to be committed. The State represented that Parker would testify that he told this to Roderick and that Roderick admitted the story to be true, although he didn't want to turn on the others because he knew he was going to the penitentiary. The court ruled that the State could not show the substance of Watson's statement, only that it had been made.

Defendant argues that Roderick's response that he didn't say whether Watson's statement was "true or not" caused the jury to infer that Watson disagreed with Roderick's testimony and thus inculpated defendant. There was no objection to the question which was framed in the dual aspect of an affirmance or a denial. Defendant's simple answer would normally be interpreted to be that he had made no response to either aspect.

While Roderick denied the statement to Parker incorporated in the succeeding question, Parker testified that when he informed Roderick of

the Watson statement, Roderick replied that he knew that he (Roderick) was going to the penitentiary and did not want to talk about Watson or Moyer. The testimony supports the conclusion that Roderick's answer indicated that Roderick did not comment about either the truth or falsity of the Watson statement. Any confusion would be clarified by the Parker testimony of no comment.

■■ Clearly the prosecution was pursuing an improper line of questioning in the guise of impeachment. The proper procedure to impeach Roderick's exculpating testimony would have been to call Watson in rebuttal to impeach the testimony concerning defendant's prior knowledge of the plan to rob. The trial court, however, correctly prevented such improper impeachment.

The judgment is affirmed.

Affirmed.

MILLS, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

In this case the evidence as to the defendant's guilt is close and boils down to a question of credibility. Upon the record, I am not prepared to say that a jury could not find the defendant guilty. However, in a close evidentiary case, the prosecution used a conviction that had been reversed to impeach the defendant. The State knew or should have known of the reversal. Under the opinion of the court in *People v. Shook* (1966), 35 Ill. 2d 597, 221 N.E.2d 290, a reversed conviction may not be used for impeachment. Here there was a valid prior conviction used for impeachment and a reversed conviction also used for impeachment. Neither this court nor the jury can distill one from the other, and upon a close case, who can say that the prior reversed conviction didn't persuade the jury that the defendant was lacking in credibility?

I see no reason to permit the use of reversed convictions for impeachment. To do so, even in harness with a valid prior conviction, is in my judgment reversible error.